**Case No. 22-11232-AA**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

DAVID WILLIAMS, individually and on behalf of all others similarly situated, CAROLL ANGLADE, individually and on behalf of all others similarly situated, HOWARD CLARK, THOMAS MATTHEWS, and MARTIZA ANGELES,

Plaintiffs-Appellees,

v.

RECKITT BENCKISER LLC and RB HEALTH (US) LLC,

Defendants-Appellees,

THEODORE H. FRANK,

Objector-Appellant.

Appeal from the United States District Court
for the Southern District of Florida

No. 1:20-cv-23564-MGC

## Appellant Theodore H. Frank's Opening Brief

Theodore H. Frank
John M. Andren
HAMILTON LINCOLN LAW CENTER
CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC 20006
(703) 203-3848
ted.frank@hlli.org
*Attorneys for Objector-Appellant*
*Theodore H. Frank*

## Certificate of Interested Persons and Corporate Disclosures

Under Cir. R. 28-1(b) and Fed. R. App. P. 26.1, Theodore H. Frank declares that he is an individual and, as such, is not a subsidiary or affiliate of a publicly owned corporation and there is no publicly held corporation that owns ten percent or more of any stock issued by him.

Under Cir. R. 28-1(b) and Cir. R. 26.1-2, the following trial judges, attorneys, persons, association of persons, firms, partnerships, and corporations are believed to have an interest in the outcome of this case or appeal:

1.    Andren, John M., Hamilton Lincoln Law Institute, Attorney for Objector-Appellant

2.    Angeles, Martiza, Plaintiff-Appellee

3.    Anglade, Caroll, Plaintiff-Appellee

4.    Barbat Mansour & Suciu, PLLC, Attorneys for Plaintiffs-Appellees

5.    Becker & Poliakoff, PA, Attorneys for *Amicus* TINA

6.    Bednarz, M. Frank, Hamilton Lincoln Law Institute, Attorney for Objector-Appellant

7.    Biderman, David T., Perkins Coie LLP, Attorney for Defendants-Appellees

8.    Bilzin Sumberg Baena Price & Axelrod, LLP, Attorneys for Defendants-Appellees

9.  Bursor & Fisher, PA, Attorneys for Plaintiffs-Appellees

10. Bryson, Daniel K., Whitfield Bryson LLP, Attorney for Plaintiffs-Appellees

11. Clark, Howard, Plaintiff-Appellee

12. Cohen, Jonathan Betten, Milberg Coleman Bryson Phillips Grossman, PLLC, Attorney for Plaintiffs-Appellees

13. Coleman, Gregory, Milberg Coleman Bryson Phillips Grossman, PLLC, Attorney for Plaintiffs-Appellees

14. Cooke, The Honorable Marcia G., United States District Judge

15. Dhillon Law Group, Inc., Attorneys for Objector-Appellant

16. Drescher, IIana Arnowitz, Bilzin Sumberg Baena Price & Axelrod, LLP, Attorney for Defendants-Appellees

17. Drozd, Dale A., United States District Court Judge

18. Fisher, L. Timothy, Bursor & Fisher, PA, Attorney for Plaintiffs-Appellees

19. Frank, Theodore H., Objector-Appellant and attorney for Objector-Appellant

20. Geer, Martha, Milberg Coleman Bryson Phillips Grossman, PLLC, Attorney for Plaintiffs-Appellees

21. Grosjean, The Honorable Erin, United States Magistrate Judge

22. Goodman, The Honorable Jonathan, United States Magistrate Judge

23. Greg Coleman Law PC, Attorneys for Plaintiffs-Appellees

24.  Hamilton Lincoln Law Institute, Attorneys for Objector-Appellant

25.  Levin Papantonio Rafferty, Attorneys for Plaintiffs-Appellees

26.  Lustrin, Lori P., Bilzin Sumberg Baena Price & Axelrod, LLP, Attorney for Defendants-Appellees

27.  Matthews, Thomas, Plaintiff-Appellee

28.  Milberg Coleman Bryson Phillips Grossman, PLLC, Attorneys for Plaintiffs-Appellees

29.  Pallett-Vasquez, Melissa, Bilzin Sumberg Baena Price & Axelrod, LLP, Attorney for Defendants-Appellees

30.  Perkins Coie LLP, Attorneys for Defendants-Appellees

31.  Polenberg, Jon, Becker & Poliakoff, PA, Attorney for *Amicus* TINA

32.  RB Health (US) LLC, Defendant

33.  Reckitt Benckiser, LLC, Defendant, (Stock ticker: "RBGLY")

34.  Sarelson, Matthew Seth, Dhillon Law Group, Inc., Attorney for Objector-Appellant

35.  Schultz, Matthew D., Levin Papantonio Rafferty, Attorney for Plaintiffs-Appellees

36.  Shub, Jonathan, Shub Law Firm LLC, Attorney for Plaintiffs-Appellees

37.  Shub Law Firm LLC, Attorneys for Plaintiffs-Appellees

38.  Sipos, Charles C., Perkins Coie, LLP, Attorney for Defendants-Appellees

39.  Smith, Laura, Attorney for *Amicus* TINA

40.    Soffin, Rachel, Milberg Coleman Bryson Phillips Grossman, PLLC, Attorney for Plaintiffs-Appellees Stanier, Lauren Watts, Perkins Coie, LLP, Attorney for Defendants-Appellees

41.    Suciu III, Nick, Milberg Coleman Bryson Phillips Grossman, PLLC, Attorney for Plaintiffs-Appellees

42.    Truth in Advertising, Inc., *Amicus*

43.    Wallace, Patrick M., Milberg Coleman Bryson Phillips Grossman, PLLC, Attorney for Plaintiffs-Appellees

44.    Whitfield Bryson LLP, Attorneys for Plaintiffs-Appellees

45.    Williams, David, Plaintiff-Appellee

Dated: June 14, 2022              */s/ Theodore H. Frank*
                                  Theodore H. Frank
                                  John M. Andren
                                  HAMILTON LINCOLN LAW INSTITUTE
                                  CENTER FOR CLASS ACTION FAIRNESS
                                  1629 K Street NW, Suite 300
                                  Washington, DC 20006
                                  Telephone: (703) 203-3848
                                  Email: ted.frank@hlli.org

                                  *Attorneys for Objector-Appellant*
                                  *Theodore H. Frank*

## Statement in Support of Oral Argument

As Cir. R. 28-1(c) permits, Appellant Theodore H. Frank respectfully requests that the Court hear oral argument because it presents significant issues about class certification and settlement. These issues, on the requirements of Rule 23, are meritorious, and pit the district court's decision against the plain text of the Rule and the decisions of other Circuits.

This appeal raises complex but recurring questions of civil procedure; their exploration at oral argument would aid this Court's decisional process and benefit the judicial system. Frank's firm has argued and won landmark appellate rulings improving the fairness of class-action settlement procedure and class certification. *E.g., In re Stericycle Sec. Litig.*, __ F.4th __, 2022 U.S. App. LEXIS 13414, *37 n.11 (7th Cir. May 18, 2022) (citing cases); *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609 (9th Cir. 2021); *Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021); *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014); *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014); *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013); *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011); *see also* Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES, Aug. 13, 2013 (calling Frank "[t]he leading critic of abusive class action settlements"). Frank is

an experienced appellate advocate and a member of the American Law Institute; he has argued before the Supreme Court. A favorable resolution here would improve the class-action process by deterring other class-action settlements designed to benefit attorneys at the expense of their putative clients.

# Table of Contents

Certificate of Interested Persons and Corporate Disclosures ................. 1

Statement in Support of Oral Argument ...................................................... i

Table of Contents ..................................................................................... iii

Table of Citations ...................................................................................... v

Jurisdictional Statement ......................................................................... xii

Statement of the Issues ............................................................................. 1

Statement of the Case .............................................................................. 3

    A.    Plaintiffs sue over Neuriva label. ........................................ 3

    B.    The parties agree to a claims-made settlement with clear sailing for fees. ...................................................... 4

    C.    Frank objects. ...................................................................... 5

    D.    The magistrate judge recommends approving the settlement, while failing to address several of Frank's objections. ............................................................................ 8

    E.    The district court adopts the Report and Recommendation without addressing any of Frank's objections. ............................................................................ 9

    F.    Standard of Review ............................................................. 9

Summary of Argument ........................................................................... 12

Argument ................................................................................................ 14

I.    Because of class-action settlements' agency problems, courts and Rule 23(e)(2)(C) recognize the need for scrutiny to prevent class counsel from self-dealing at the expense of absent class members. It is not enough that a settlement be large enough. The settling parties must also *allocate* benefits fairly to satisfy Rule 23. ................................................ 14

    A.    The district court erred as a matter of law when it failed to address Rule 23(e)(2)(C) factors not listed in *Bennett*. ............................................................................ 14

B.   Rule 23(e)(2)(C) requires courts to be wary of the
     allocation of a class-action settlement. .................................. 16

C.   Settlements may contain illusory relief that obscures
     the true allocation of the class relief. .................................. 18

II.  The settlement approval cannot stand as a matter of law
     because class counsel negotiated $2.9 million for themselves
     in a settlement where the class receives only $1.1 million. .......... 23

A.   Disproportionate allocation violates Rule 23(e)(2)(C)
     even without a showing of actual collusion. ......................... 23

B.   A settlement that pays class members $1,100,000 is
     not worth the $8 million putatively "made available";
     the district court erred under Rule 23(e)(2)(C)(ii)
     holding otherwise. ............................................... 31

III. The injunction to replace a few words in Neuriva's future
     marketing does not direct relief to the class, so cannot
     support final approval of the settlement. .......................... 37

A.   Prospective injunctive relief must benefit the class—
     not hypothetical future consumers, much less RB's
     competitors. ..................................................... 39

B.   That the lawsuit precipitated an injunction is not
     enough—the injunction must be valuable to the class......... 49

Conclusion .......................................................... 52

Addendum of Statutes and Rules ....................................... 53

Certificate of Compliance .............................................. 54

# Table of Citations

## Cases

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
421 U.S. 240 (1975) ........................................................ 40

*In re Baby Prods. Antitrust Litig.*,
708 F.3d 163 (3d Cir. 2013) ...................................... 6, 36

*Bankers Trust Co. v. Mallis*,
435 U.S. 381, 98 S. Ct. 1117 (1978) .................................. xii

*Bennett v. Behring Corp.*,
737 F.2d 982 (11th Cir. 1984) ............................ 14-15, 45

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .............. 6, 18-19, 22, 25-27, 29, 41-42

*Boeing v. Van Gemert*,
444 U.S. 472 (1980) ......................................... 31-33

*\*Briseño v. Henderson*,
998 F.3d 1014 (9th Cir. 2021) ............................... *passim*

*Camden I Condominium Ass'n, Inc. v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) ................................. 19, 28

*In re Carrier iQ, Inc. Consumer Privacy Litig.*,
No. 12-md-02330-EMC,
2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ................................ 20

*Citizens for Police Accountability Political Comm. v. Browning*,
572 F.3d 1213 (11th Cir. 2009) ..................................... 10

*Day v. Persels & Assocs., LLC*,
729 F.3d 1309 (11th Cir. 2013) ..................................... 10

*Dennis v. Kellogg, Inc.*,
697 F.3d 858 (9th Cir. 2012) ....................................... 28

*Devlin v. Scardelletti*,
    536 U.S. 1 (2002) ............................................................ xii

\*In re Dry Max Pampers Litig.*,
    724 F.3d 713 (6th Cir. 2013)
    .................................................. 6, 8-9, 13, 16-18, 22, 24, 29, 39, 46

*Eubank v. Pella Corp.*,
    753 F.3d 718 (7th Cir. 2014) .................................................. 26, 36

*Faught v. Am. Home Shield Corp.*,
    668 F.3d 1233 (11th Cir. 2011) .................................................. 42-45

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995).................................................. 10, 25, 29

*Glasser v. Volkswagen of Am., Inc.*,
    645 F.3d 1084 (9th Cir. 2011) .................................................. 26

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .................................................. 42

*In re Home Depot Inc., Customer Data Sec. Breach Litig.*,
    931 F.3d 1065 (11th Cir. 2019) .................................................. 29-30

*Holmes v. Continental Can Co.*,
    706 F.2d 1144 (11th Cir. 1983) .................................................. 10, 31

*Janicijevic v. Classica Cruise Operator, Ltd.*,
    No. 20-cv-23223, 2021 U.S. Dist. LEXIS 95561
    (S.D. Fla. May 19, 2021).................................................. 45

\*Johnson v. NPAS Sols, LLC*,
    975 F.3d 1244 (11th Cir. 2020) ...................... 2, 9-11, 13, 15, 24, 38

*In re Katrina Canal Breaches Litig.*,
    628 F.3d 185 (5th Cir. 2010) .................................................. 37

*Kim v. Allison*,
    8 F.4th 1170 (9th Cir. 2021).................................................. 17

*Koby v. ARS Nat'l Servs.*,
  846 F.3d 1071 (9th Cir. 2017) ........................................................ 47

*Koon v. United States*,
  518 U.S. 81 (1996) .......................................................................... 10

*Luevano v. Wal-Mart Stores, Inc.*,
  722 F.3d 1014 (7th Cir. 2013) ........................................................ xii

*Marek v. Lane*,
  571 U.S. 1003 (2013) ...................................................................... 48

*McDonough v. Toys "R" Us*,
  80 F. Supp. 3d 626 (E.D. Pa. 2015) ............................................... 36

*McKinney-Drobnis v. Oreshack*,
  16 F.4th 594 (9th Cir. 2021) .......................................................... 30

*McNamara v. Gov't Emps. Ins. Co.*,
  30 F.4th 1055 (11th Cir. 2022) ................................................ 33, 50

*Mertinez-Mendoza v. Champion Int'l Corp.*,
  340 F.3d 1200 (11th Cir. 2003) ...................................................... xii

*\*Pearson v. NBTY, Inc.*,
  772 F.3d 778 (7th Cir. 2014)
    ............................................6, 8, 12, 17-18, 20, 22, 25-28, 30, 36, 48

*Pearson v. Target Corp.*,
  No. 1:11-cv-07972, Dkt. 288 (N.D. Ill. Aug. 25, 2016) .................. 37

*Pettway v. Am. Cast Iron Pipe Co.*,
  576 F.2d 1157 (5th Cir. 1978) .................................................... 16-17

*Piambino v. Bailey*,
  757 F.2d 1112 (11th Cir. 1985) ......................... 14-17, 23, 25, 36, 40

*Poertner v. Gillette Co.*,
  618 F. App'x 624 (11th Cir. 2015) ................................. 31, 33, 49-51

*Poertner v. Gillette Co.*,
  No. 6:12-cv-803, 2014 WL 4162771,
  2014 U.S. Dist. LEXIS 116616 (M.D. Fla. Aug. 21, 2014) ............ 33

*Public Health Trust of Dade Cty., Fla. v. Lake Aircraft, Inc.*,
  992 F.2d 291 (11th Cir. 1993) ........................................................ 31

*Redman v. RadioShack Corp.*,
  768 F.3d 622 (7th Cir. 2014) .................................................. 19, 28

*Roes v. SFBSC Mgmt., LLC*,
  944 F.3d 1035 (9th Cir. 2019) ...................................... 18, 20, 22, 24

*In re Samsung Top-Load Washing Machine Mktg., Sales Practices
  & Prods. Liab. Litig.*,
  997 F.3d 1077 (10th Cir. 2021) ................................................ 28, 31

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) ....................................................................... 40

*Silverman v. Motorola, Inc.*,
  739 F.3d 956 (7th Cir. 2013) ......................................................... 26

*In re Southwest Air. Voucher Litig.*,
  898 F.3d 740 (7th Cir. 2018) ........................................................... 7

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ................................................... 21, 25

*In re Stericycle Sec. Litig.*,
  __ F.4th __,
  2022 U.S. App. LEXIS 13414 (7th Cir. May 18, 2022) ................... 6

*\*Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) .............................................. 13, 39, 46

*In re TD Ameritrade Accountholder Litig.*,
  266 F.R.D. 418 (N.D. Cal. 2009) ................................................... 42

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) ............................................................. 40-41

*United States v. Irey*,
    612 F.3d 1160 (11th Cir. 2010) (*en banc*) ....................................... 10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................... 35

*Waters v. Int'l Precious Metals Corp.*,
    190 F.3d 1291 (11th Cir. 1999) ................................................... 31-32

*Wilson v. EverBank*,
    No. 14-CIV-22264, 2016 U.S. Dist. LEXIS 15751
    (S.D. Fla. Feb. 3, 2016) ................................................................... 45

## Rules and Statutes

28 U.S.C. §1291 .....................................................................................xi

28 U.S.C. §1332(d)(2) ..........................................................................xi

28 U.S.C. §1332(d)(10).........................................................................xi

Fed. R. App. P. 4(a)(1)(A) ....................................................................xii

Fed. R. App. P. 4(a)(7)(A)(ii)................................................................xii

Fed. R. Civ. P. 23....................................................................... 14, 39, 41

Fed. R. Civ. P. 23(b)(2) ...................................................................... 42

Fed. R. Civ. P. 23(b)(3) ................................................................... 4, 38

Fed. R. Civ. P. 23(e)...................................................................... 32, 51

Fed. R. Civ. P. 23(e)(2) ...................................... 12, 14-15, 17, 24

Fed. R. Civ. P. 23(e)(2)(A) ................................................................ 14

Fed. R. Civ. P. 23(e)(2)(B).................................................... 14, 17, 24

Fed. R. Civ. P. 23(e)(2)(C)........................................................ *passim*

Fed. R. Civ. P. 23(e)(2)(C)(i) ................................................. 14, 17, 30, 45

*Fed. R. Civ. P. 23(e)(2)(C)(ii) ................................. 12, 14, 21, 31, 35, 37

*Fed. R. Civ. P. 23(e)(2)(C)(iii) ...................................... 14, 17, 24, 30, 45

Fed. R. Civ. P. 23(f) ...............................................................................28

Fed. R. Civ. P. 23(h) ...............................................................................32

Fed. R. Civ. P. 58(a)................................................................................xii

Fed. R. Civ. P. 72(b)(2) ........................................................................xi, 9

U.S. Const., Art. III ................................................................................41

**Other Authorities**

AMERICAN LAW INSTITUTE,
     PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.13 (2010)..........36

Bulik, Beth Snyder,
     *Newly rebranded Reckitt casts 'Big Bang' actress—and real-
     life neuroscientist—Mayim Bialik in new Neuriva campaign*,
     Fierce Pharma (Mar. 24, 2021) .......................................................3

David, Larry,
     "The Non-Fat Yogurt," *Seinfeld* (NBC Nov. 4, 1993).....................43

Erichson, Howard,
     *Aggregation as Disempowerment*,
     92 NOTRE DAME L. REV. 859 (2016)................................................19

Erichson, Howard M..
     *How to Exaggerate the Size of Your Class Action Settlement*,
     DAILY JOURNAL (Nov. 8, 2017).......................................................18

Federal Judicial Center,
     *Manual Complex Litigation (Fourth)* §21.71 (2004)......................33

Federal Rules Committee,
Notes of Advisory Committee to 2003 Amendments to
Rule 23 ............................................................................. 33

Frank, Theodore H.,
*Settlement Insurance Shows Need for Court Skepticism in
Class Actions*, OpenMarket blog (Aug. 31, 2016) .......................... 20

Isaacharoff, Samuel,
*The Governance Problem in Aggregate Litigation*,
81 FORDHAM L. REV. 3165 (2013) ............................................. 32-33

Rothstein, Barbara J. & Thomas E. Willging,
*Managing Class Action Litigation: A Pocket Guide for
Judges* (Federal Judicial Center 2005) ..................................... 34-35

S. Rep. No. 109-14 (2005) ................................................... 39-40

Schwartz, Victor E. & Christopher E. Appel,
*Government Regulation and Private Litigation: The Law
Should Enhance Harmony, Not War*,
23 B.U. PUB. INT. L.J. 185 (2014) ................................................. 40

Sheley, Erin L. & Theodore H. Frank,
*Prospective Injunctive Relief and Class Settlements*,
39 HARV. J. L. & PUB. POL'Y 769 (2016).......................................... 41

Silver, Charles,
*Due Process and the Lodestar Method*,
74 TULANE L. REV. 1809 (2000) ..................................................... 25

Wolfman, Brian & Alan B. Morrison,
*Representing the Unrepresented in Class Actions Seeking
Monetary Relief*, 71 NYU L. REV. 439 (1996).................................. 27

## Jurisdictional Statement

The district court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a class action where the amount in controversy exceeds $5,000,000 exclusive of costs; many class members in the nationwide class are citizens of states other than a defendant's state of citizenship; and no exception to the Class Action Fairness Act applies. For example, named plaintiff David Williams is a citizen of Florida, and defendants Reckitt Benckiser LLC and RB Health (US) LLC are unincorporated associations organized in Delaware with their principal places of business in New Jersey. Dkt.51 at 5-6;[1] *cf.* 28 U.S.C. § 1332(d)(10).

This court has appellate jurisdiction under 28 U.S.C. § 1291 because this is a timely filed appeal from a final decision. Class member and objector Frank filed a timely objection to a proposed class action settlement. Dkt.75. The Magistrate Judge issued a Report and Recommendation on December 15, 2021, recommending that the district court should approve the settlement. Dkt.133. Frank timely objected under Fed. R. Civ. P. 72(b)(2) to the Report and Recommendation on December 29, 2021. Dkt.135. The district court overruled Frank's objections, adopted the Report and Recommendation in full, and

---

[1] "Dkt." refers to the district court docket here. Citations to docket page numbers are to numbers reflected in ECF headers.

approved the settlement in a written approval order dated March 17, 2022. Dkt.140. (Although the district court did not enter final judgment on a separate document as required by Fed. R. Civ. P. 58(a), this Court can treat the appeal as one from a proper final judgment because there are "clear signal[s] from the district court" that it intended to issue a final order. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1020 (7th Cir. 2013); *see also Bankers Trust Co. v. Mallis*, 435 U.S. 381, 384, 98 S. Ct. 1117 (1978); *Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1215 n.35 (11th Cir. 2003) ("[W]here a district court treats the litigation as having ended—the court's judgment is final, and the appeal may go forward." (citation omitted)). In the alternative, the Rules consider the judgment entered 150 days after March 17, 2022, on Monday, August 15, 2022. Fed. R. App. P. 4(a)(7)(A)(ii).)

Frank filed a notice of appeal on April 15, 2022. Dkt.141. This notice was timely under Fed. R. App. P. 4(a)(1)(A).

Objectors have standing to appeal a final approval of a class action settlement without the need to intervene formally in the case. *Devlin v. Scardelletti,* 536 U.S. 1 (2002).

## Statement of the Issues

1.    The 2018 amendments to Rule 23(e)(2)(C) require that courts evaluating a proposed class action settlement consider whether "the relief provided for the class is adequate" including whether the settlement provide an effective method to "distribut[e] relief" and the "terms of any proposed award of attorneys' fees." The only appellate courts to discuss these amendments hold that these rules require district courts to evaluate actual class recovery. *E.g., Briseño v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021). Did the lower court err as a matter of law in failing to evaluate the settlement under Rule 23(e)(2)(C); and by approving a settlement that awards class counsel a disproportionate fee of about three times what the class reliefs, and includes terms favoring class counsel that appellate courts identify as red flags?

(Raised at Dkt.75 at 31-35; Dkt.135 at 8-9, 17-25; ruled on at Dkt.133 at 35 and Dkt.140.)

2.    The settlement requires the defendant to make labeling changes in its marketing going forward. This injunction is exclusively prospective and applies equally to class members (who are waiving claims for monetary relief for past damages) and non-class members alike, but has no effect on class members who no longer do business with the defendant. Did the district court err as a matter of law in crediting a

1

prospective, non-exclusive injunction as a benefit to a class of past purchasers releasing damages claims?

(Raised at Dkt.75 at 28; Dkt.117 at 11-12; Dkt.125 at 4-5; Dkt.135 at 10-11, 14; ruled on at Dkt.133 at 35 and Dkt.140.)

3.    A district court must give a "reasoned response" to objections made with specificity. *Johnson v. NPAS Sols, LLC*, 975 F.3d 1244, 1262 (11th Cir. 2020). Did the district court commit reversible error when it approved the settlement without addressing several of Frank's objections?

(Raised at Dkt.75 at 28, 32-33; Dkt.117 at 11-12; Dkt.125 at 4-5; Dkt.135; ruled on at Dkt.133 and Dkt.140.)

## Statement of the Case

### A.    Plaintiffs sue over Neuriva label.

Reckitt Benckiser LLC and RB Health (US) LLC (collectively, "RB") manufactures the supplement Neuriva, which it heavily advertises on television. In 2020, three sets of plaintiffs in three separate putative class-action complaints, later amended and consolidated into a single complaint, sued RB alleging, among other things, that it deceptively marketed Neuriva as promoting cognitive function when in fact "none of the Neuriva Products has ever been clinically studied." Dkt.51 at 4; Dkt.116-1 at 6-7. For example, Plaintiffs alleged Defendant's products falsely claimed Neuriva "Fuels 5 indicators of brain performance." Dkt.51 at 10.

Neither the district court nor the settling parties say how large the national class is, but RB's brand manager has publicly reported over $100 million in sales, implying that RB has sold millions of bottles of Neuriva. Beth Snyder Bulik, *Newly rebranded Reckitt casts 'Big Bang' actress— and real-life neuroscientist—Mayim Bialik in new Neuriva campaign*, Fierce Pharma (Mar. 24, 2021), *available at* https://www.fiercepharma.com/marketing/newly-rebranded-reckitt-casts-big-bang-actress-mayim-bialik-campaign-for-otc-brand (last accessed June 11, 2022).

3

**B.    The parties agree to a claims-made settlement with clear sailing for fees.**

Before the court decided any motions to dismiss and before any formal discovery, the parties settled in January 2021. Dkt.52-1. The district court referred future proceedings to Magistrate Judge Jonathan Goodman. Dkt.53.

The settlement covered a Rule 23(b)(3) class of "[a]ll persons who purchased … one or more Neuriva Products … between January 1, 2019 and the date of Preliminary Approval of the Settlement by the Court." Dkt.116-1 at 7. Class members with receipts of their purchases could recover up to $32.50 per claim with a maximum number of two claims, for a total potential recovery of $65.00. *Id.* at 11. Without receipts, class members could instead only recover $5.00 per claim, with a maximum number of four claims, for a total potential recovery of $20.00. *Id.* All claims must include certifications under penalty of perjury. *Id.* at 12. The settlement caps total recovery for the class at $8 million, with reductions to all claims on a *pro rata* basis if claims exceed that amount. *Id.* Should claims exceed $8 million, RB would also have the unconditional right to terminate the settlement. *Id.* But if claims were less than $8 million, RB would have no obligation to pay more than the claims made. *Id.* at 11.

Under the final version of the settlement ultimately approved by the court, "Injunctive Relief" requires RB to change Neuriva's labeling and marketing materials for a period of two years starting six months

after the settlement becomes final. Dkt.116-1 at 9. The settlement enjoined RB from use of the terms "Clinically Proven," "Science Proved," and "Clinically Tested and Shown," although RB may use terms like "science tested" and "clinically tested" without "shown." *Id.* An exemplary Neuriva package attached as an exhibit to the settlement shows that RB will continue to market Neuriva as "Clinically Tested" and "clinically tested to help support brain health." *Id.* at 54.

The settlement entitled six law firms to seek $2.9 million in attorney's fees and RB agreed not to oppose the request. Dkt.116-1 at 14-15. This equals a 2.5x multiplier on class counsel's lodestar. Dkt.133 at 96. If the court awarded less than $2.9 million, the remainder would revert to RB. Dkt.116-1 at 14-15. RB agreed that it would support Plaintiffs' efforts to prove the value of the proposed injunctive relief to the court to win settlement approval and their fee request. *Id.* at 10.

Class members released all claims relating to misleading labeling and marketing of Neuriva products. Dkt.116-1 at 16-17.

### C.    Frank objects.

Theodore Frank timely objected to the settlement and fee request. Dkt.75. Frank is a public-interest attorney who has previously

successfully challenged settlements that favored class attorneys over their putative clients, winning millions of dollars for class members.[2]

Frank objected that the settlement was structured to benefit the attorneys at the expense of the class in violation of the amended Federal Rule of Civil Procedure 23(e)(2). Dkt.75 at 10-28, 31-35. He argued the purported $8 million settlement value was illusory, because the claims process was structured so that class members were certain to receive a small fraction of that amount. *Id.* at 7; Dkt.135 at 19. And, as a result, the attorneys—who had unfairly protected their fee request with "clear sailing" and a segregated fund that did not revert to the class—would receive much more than the class did. Dkt.75 at 31-35. Frank observed that class members like him, who would not purchase Neuriva again, receive no conceivable benefit from the injunction. *Id.* at 28 n.10. Frank noted that class members, defined as *past purchasers*, receive no benefit from prospective injunctive relief. Dkt.117 at 11-12 (citing *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013) ("*Pampers*") and *Pearson*, 772 F.3d at 786 (7th Cir. 2014)); Dkt.125 at 4-5. The slight

---

[2]*E.g.*, *Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021); *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014); *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). *See generally* Dkt.75-1; *see also In re Stericycle Sec. Litig.*, __ F.4th __, 2022 U.S. App. LEXIS 13414, *37 n.11 (7th Cir. May 18, 2022) (citing cases).

change in wording was meaningless even to future consumers (and, by extension, costless to RB), and RB's marketing of Neuriva remained as allegedly misleading as before the litigation and settlement. Dkt.125 at 2-5.

Truth in Advertising, Inc. ("TINA"), an independent, non-profit, advertising watchdog organization, filed an *amicus curiae* brief. Dkt.83. TINA agreed with Frank that the injunctive relief was worthless to class members. Dkt.83 at 3-11; Dkt.122. It also agreed that the amount of attorney's fees received by class counsel far outstripped the monetary relief provided to the class. Dkt.83 at 12-14.

According to the settlement, the claims period runs until 45 days after final approval, May 2, 2022. Dkt.116-1 at 3. The parties have not provided and the court has not requested a final audited number. Before the R&R, the settlement administrator reported on October 10, 2022 that the class made $935,332.50 worth of unaudited claims. Dkt.128-1 at 2. The administrator updated the figure to $1,109,182.50 on January 10, extrapolating for expected claims from mailed forms that it had not examined. Dkt.137-1 at 5. The administrator reported "the submitted claims have not yet been reviewed for completeness, deduplication, or fraud determination." *Id*. Upon information and belief from the results in past settlements, the amount paid to the class will drop below $1 million after auditing. *E.g.*, *In re Southwest Air. Voucher Litig.*, 898 F.3d 740, 743 (7th Cir. 2018) (audit eliminates more than two-thirds of claims).

**D.    The magistrate judge recommends approving the settlement, while failing to address several of Frank's objections.**

On December 15, 2021, Magistrate Judge Goodwin issued his Report and Recommendation ("R&R") to approve the proposed settlement. Dkt.133. Relying on cases predating the 2018 amendments to Rule 23 without addressing Frank's arguments about those amendments, the R&R found the proper value of the settlement fund was the amount made available, or $8 million dollars here, *id.* at 83; that the funds "clear sailing" and "kicker" provisions were not indicative that class counsel compromised class members recovery here, *id.* at 87; and that class counsel's $2.9 million fee request was within the bounds of an allowable percentage of the fund, given the previous valuation as the funds made available, *id.* at 90-91. The R&R found that the "a settlement providing $8 million in cash and prospective injunctive relief" was an "excellent" "result[]." *Id.* at 102. It found that the injunctive relief provided was "significant" but did not provide a valuation of the injunction, stating only that it was worth "some amount." *Id.* at 94. It also noted that "the Undersigned feels comfortable concluding that the injunctive relief has some value but articulating a specific dollar range would be speculative." *Id.* at 97. It did not address Frank's objection that the prospective injunctive relief was not compensation for past damages. The R&R did not cite *Pampers* at all, and distinguished *Pearson* as a settlement that provided "only $865,284 … for the settlement class,

which amounted to only **seven cents per class member**," without addressing the reasoning of *Pearson* where the settling parties argued that they had made millions of dollars available. *Id.* at 104-05.

### E. The district court adopts the Report and Recommendation without addressing any of Frank's objections.

As Rule 72(b)(2) permits, on December 29, 2021, Frank objected to the R&R. Dkt.135. Frank argued the R&R erred in crediting the injunctive relief as having any value to class members because, among other reasons, the class of past purchasers could not possibly benefit *as class members* from the *prospective* injunctive relief. *Id.* at 10-14. Frank also argued that the R&R did not analyze the settlement, as it must, under Fed. R. Civ. P. 23(e)(2)(C), and that the revised language of the Rule precluded approval of the settlement because it unfairly benefited class counsel at the expense of class members. *Id.* at 17-25.

On March 17, 2022, the district court overruled Frank's objection and adopted in full the R&R in a one-page order without addressing any of Frank's specific objections. Dkt.140. Frank timely filed his notice of this appeal on April 15, 2022. Dkt.141.

### F. Standard of Review

A district court decision to approve a class-action settlement is reviewed for abuse of discretion. *Johnson v. NPAS Sols, LLC*, 975 F.3d

1244, 1251 n.2 (11th Cir. 2020); *Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1316 (11th Cir. 2013).

"A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996). Or if it "applies the law in an unreasonable or incorrect manner." *Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 1216 (11th Cir. 2009). Or if it "follows improper procedures in reaching its decision." *Johnson*, 975 F.3d at 1251 n.2 (internal quotations and alterations omitted). Or if it fails to provide a "reasoned response" to objections to settlement approval. 975 F.3d at 1262. Or if it "fails to afford consideration to relevant factors that were due significant weight" or where "it considers the proper factors but balances them unreasonably." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*) (citing cases).

Review is subject to more searching scrutiny yet where, as here, parties negotiate the settlement before class certification. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 786-800, 805 (3d Cir. 1995) ("*GM Trucks*"). In appellate review, courts must recognize that "the class settlement process is more susceptible than adversarial adjudications to certain types of abuse." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983) (internal quotation omitted).

Questions of law are reviewed *de novo*, including, as Frank asks on this appeal, interpretation of the Federal Rules of Civil Procedure. *Johnson*, 975 F.3d at 1252 n.3.

## Summary of Argument

Courts recognize that Rule 23(e)(2)(C), created by amendment in 2018, forbids class-action settlements that disproportionately favor class counsel over their clients. *E.g.*, *Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021); *cf. also Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014) (same holding pre-amendment). This settlement paid attorneys $2.85 million, about three times as much as the class will receive, an upside-down disproportion. But the district court erred as a matter of law in valuing the benefit to the class as the fictional $8 million "made available" in a claims process that had no chance of distributing that amount. This contradicts the plain language of Rule 23(e)(2)(C)(ii) and creates perverse incentives for future class counsel. But the district court did not follow the commands of the amended Rule 23(e)(2) at all, or address Frank's objections about the violations of the Rule.

Normally, courts can adjust disproportion in common-fund settlements by reducing the percentage of the common fund going to the attorneys, thus increasing the share of the settlement benefit the class receives. But here, the parties structured the settlement with clauses that both prevented class-members from requesting that redistribution and a court from making it. The settlement's segregation of the fee fund from the class recovery meant that money that Neuriva was willing to pay to settle the case would revert to Neuriva if a court reduced fees. The settlement even shielded the fees with a clear-sailing provision. Courts

12

recognize that these are "questionable provisions," red flags of self-dealing that should count against settlement approval. *E.g.*, *Briseño*, 998 F.3d at 1018. The court below erred as a matter of law in considering them beneficial provisions.

The injunction arguably provides no value to anyone, but, for purposes of this appeal, what's relevant is that it is not targeted to class members, and thus not consideration for class members who are waiving claims for past damages. *In re Dry Max Pampers Litig.*, 724 F.3d 713, 720 (6th Cir. 2013); *Synfuel Tech., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006). The district court failed to provide a reasoned response to Frank's objection on this score, but also erred as a matter of law in failing to follow *Pampers*, and crediting an injunction as valuable consideration to the class when it applies to class members and non-class members alike.

Because the district court failed to apply the proper legal standards of Rule 23(e)(2)(C), and because the court failed to provide reasoned responses to several of Frank's objections, its approval of the settlement must be vacated. *Johnson*, 975 F.3d at 1262. Because the settlement impermissibly favors class counsel at the expense of their clients with a bevy of questionable provisions and fees that dwarf the payout to the class, a court should not approve it, and this Court should say so.

13

# Argument

I.  **Because of class-action settlements' agency problems, courts and Rule 23(e)(2)(C) recognize the need for scrutiny to prevent class counsel from self-dealing at the expense of absent class members. It is not enough that a settlement be large enough. The settling parties must also *allocate* benefits fairly to satisfy Rule 23.**

   A.  **The district court erred as a matter of law when it failed to address Rule 23(e)(2)(C) factors not listed in *Bennett*.**

The 2018 amendments to Rule 23(e)(2) created a new list of elements district courts must consider before approving a class-action settlement. The Eleventh Circuit has long had a six-factor test for evaluating settlement fairness. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). That test is generally consistent with the new requirements of Rules 23(e)(2)(A), (B), and (C)(i), none of which are at issue in this appeal.

But the 2018 amendments also added, among other things, Rules 23(e)(2)(C)(ii), requiring evaluation of "the effectiveness of any proposed method of distributing relief to the class," and (C)(iii), requiring evaluation of settlement fairness with respect to "the terms of any proposed award of attorney's fees." Even before the 2018 amendments, this Court recognized that satisfying the six-factor *Bennett* test was

necessary, but not sufficient, to withstand appellate review. *E.g.*, *Piambino v. Bailey*, 757 F.2d 1112 (11th Cir. 1985).

The district court here quoted Rule 23(e)(2)'s requirements in a footnote, Dkt.133 at 35 n.7, but did not assess any of the factors in Rule 23(e)(2) not listed in *Bennett*. This by itself was reversible error.

And neither the magistrate report nor the district court opinion perfunctorily adopting the report considered Frank's objections based on Rule 23(e)(2)(C). Dkt.75 at 32-33, Dkt.135 at 8-9, 17-21. The failure of the district court to "set forth on the record a reasoned response to … objections" by itself independently warrants a remand. *Johnson*, 975 F.3d at 1262.

But this Court can go beyond asking the district court to apply the correct standard of law and to make a reasoned response to objections. As discussed below, the settlement violated Rule 23(e)(2)(C) as a matter of law. The settlement here, which waives the retrospective damages claims of class members, paid class counsel $2.9 million (a 2.5x multiplier on their lodestar), but class members will likely receive less than $1 million. (There is also prospective injunctive relief of "some" "speculative" value (Dkt.133 at 97), but, as discussed in Section III below, that injunctive relief applies to class members and non-class members alike.)

If the settling parties created a $4 million common fund, Rule 23 would not permit class counsel to extract over 70% of the common fund

in fees. There is no reason to approve such an unfair distribution because the parties instead structured the settlement to segregate the proposed fees from the proposed class recovery.

### B. Rule 23(e)(2)(C) requires courts to be wary of the allocation of a class-action settlement.

To protect members of the class who are not parties to the settlement agreement, courts have a duty to ensure that class counsel have not unfairly bargained away the rights of those absent class members. Unlike settlements in other civil litigation, class-action settlements require court approval under Rule 23's standards. "The parties to an ordinary settlement bargain away only their own rights— which is why ordinary settlements do not require court approval. In contrast, class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of the unnamed class members who by definition are not present during the negotiations." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013) ("*Pampers*"). To "guard against settlements that may benefit the class representatives or their attorneys at the expense of the absent class members," the district must act as a fiduciary for the class and apply "careful scrutiny" to the proposed settlement. *Holmes*, 706 F.2d at 1147; *accord Piambino*, 757 F.2d at 1139; *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1215-16 (5th Cir. 1978) (commanding district courts to "always consider the possibility that that an agreement reached by the

class attorney is not in the best interest of the class" and to beware of settlements which enrich class counsel to a greater degree than they do the absent class).

Every dollar reserved to the class is a dollar defendants cannot pay class counsel, so naturally, a conflict of interest can emerge. Because defendants are interested only in disposing of the total claim asserted and "are uninterested in what portion of the total payment will go to the class and what percentage will go to the class attorney," they "operate[] as no brake against the invidious effects of such a conflict of interest." *Piambino*, 757 F.2d at 1143; *accord Pearson*, 772 F.3d at 787. Thus, while class counsel and defendants have proper incentives to bargain effectively over the *size* of a settlement, they have no such constraints on *allocating* it between the payments to class members and the fees for class counsel—unless courts police that allocation. *Pampers*, 724 F.3d at 717.

The new Rule 23(e)(2) reinforces this. A settlement can be at arm's length (satisfying Rule 23(e)(2)(B)) and large enough to reflect the fair value of the underlying case (satisfying Rule 23(e)(2)(C)(i)). But a settlement must also satisfy Rule 23(e)(2)(C)(iii). When, as here, class counsel use negotiated fee provisions to favor themselves over their clients, a district court has a legal obligation to reject the proposed settlement, even when negotiated at arm's length. *Piambino*, 757 F.2d at 1139; *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021); *Briseño v.*

17

*Henderson*, 998 F.3d 1014 (9th Cir. 2021); *see also Pampers*, 724 F.3d at 721; *Pearson v. NBTY, Inc.*, 772 F.3d 778, 786-87 (7th Cir. 2014); *Bluetooth*, 654 F.3d at 948-49.[3]

## C. Settlements may contain illusory relief that obscures the true allocation of the class relief.

Class counsel can structure a settlement to obscure the relative allocations between lawyers and class members by artificially inflating the settlement's apparent value. The illusion of a large settlement benefits both class counsel and a defendant: "The more valuable the settlement appears to the judge, the more likely the judge will approve it. And the bigger the settlement, the bigger the fee for class counsel." Howard M. Erichson, *How to Exaggerate the Size of Your Class Action Settlement*, DAILY JOURNAL (Nov. 8, 2017).[4] Without judicial oversight to weed out such practices, class members are left with disproportionate

---

[3] Courts have sometimes imprecisely referred disproportional results as a sign of "collusion." *Briseño*, 998 F.3d at 1026. In fact, adversarial arm's-length *self-dealing* can lead to impermissible results. "[T]he incentives for the negotiators to pursue their own self-interest … *can influence the result of the negotiations without any explicit expression or secret cabals*." *Roes*, 944 F.3d at 1050 n.13 (cleaned up and emphasis added) (finding insufficient a district court's finding that settlement was non-collusive where reversionary terms allowed the defendant to keep most of the purported relief).

[4] *Available at* https://www.dailyjournal.com/articles/344700-how-to-exaggerate-the-size-of-your-class-action-settlement.

settlements in which class counsel recovers far more than the 20-to-30-percent benchmark set by this Court. *See* Howard Erichson, *Aggregation as Disempowerment*, 92 NOTRE DAME L. REV. 859 (2016); *see also Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991) (outlining the 20-30% benchmark).

Consider the likelihood of settlement approval if class counsel openly sought approval of a common-fund cash settlement of $4 million, which paid the lawyers $2.9 million in fees and expenses and leaving class members perhaps $1 million in collective recovery—as this settlement ultimately does. Few judges would approve that allocation, and precedent forecloses that result. *See, e.g.*, *Redman v. RadioShack Corp.*, 768 F.3d 622, 630-32 (7th Cir. 2014) (55%-67% allocation unfair); *Bluetooth*, 654 F.3d at 947-49 (disproportionate fee award is a hallmark of an unfair settlement). For the attorney fee and deal to have any chance of court approval, it must conceal this result. So settling parties create hypothetical class recoveries and difficult-to-calculate "benefits" that ultimately have little value to the class but are cheap for defendants to provide. These hypothetical recoveries get a high price tag that inflates the overall "value" of the settlement package that goes to the judge, but do nothing for the class.

A "claims-made" structure is among the most common tools used to achieve the mirage of value. In this type of settlement, rather than make direct payment to class members, a defendant agrees to make a specified

19

amount of money *available* to the class, in theory at least, but only pay out on the claims that class members file. *See Pearson*, 772 F.3d at 782-83 (describing perverse incentives created by a claims-made settlement); *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1058-59 (9th Cir. 2019) ("*Roes*") (same). Nearly all of the class members will not file a claim and thus will go uncompensated because claims rates are "notoriously low." *Briseño*, 998 F.3d at 1026.

Settling parties expect that the amount the defendant will pay will be nowhere near the amount "made available" because single-digit claims rates are endemic to class actions, particularly without any direct notice to the class. *Briseño*, 998 F.3d at 1026 n.3; *see also, e.g.*, *In re Carrier iQ, Inc. Consumer Privacy Litig.*, No. 12-md-02330-EMC, 2016 WL 4474366, at *4 (N.D. Cal. Aug. 25, 2016) (prominent settlement administrator found a median claims rate of 0.023% in settlements with publication-only notice); *Pearson*, 772 F.3d at 782 ("the percentage of class members who file claims [in consumer class actions] is often quite low"). In fact, private services are now available to forecast the cost of class-action settlements with actuarial certainty and assume 100% of the risk should payouts be higher. Theodore H. Frank, *Settlement Insurance Shows Need for Court Skepticism in Class Actions*, OpenMarket blog (Aug. 31, 2016).[5]

---

[5] *Available at* https://cei.org/blog/settlement-insurance-shows-need-court-skepticism-class-actions (last accessed Jun. 12, 2022).

Under the claims-made structure, class members recover—and a defendant pays—much less than when a defendant disburses funds directly to the class in a common fund. At the same time, class counsel can, as they did here, boast about the amount purportedly "made available" and seek to justify a large fee award, even though class members will receive a small fraction of that amount.

The way to ameliorate this problem is to motivate counsel to seek out absent members by tying fees to the amounts the class *actually* receives. As long as class counsel can maintain the illusion of an amount "made available" that justifies their fee award, and defendants can buy peace at a fraction of that amount, class counsel has every incentive to ensure that their putative clients will neither make claims nor receive cash. But, as Section II below discusses, Rule 23(e)(2)(C)(ii) requires courts to see through that illusion.

Injunctive relief is another tool that enables class counsel and the defendant to inflate the perceived value of the settlement. The value of injunctive relief is "easily manipulable by overreaching lawyers seeking to increase the value assigned to a common fund." *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003). Defendants benefit from res judicata following judicial approval of the settlement and the minimal cost of that relief, while class counsel hopes for approval of a higher fee request. The critical question for a reviewing court is whether the change achieved by

the settlement benefits class members *as class members*. *See* Section III below.

Where courts fail to insist that settling parties compensate the class for their injuries, settlements will look like the one here: a claims process that limits class members' collective recovery; attorneys' fees wildly disproportionate to the actual payout to the class, shielded from appellate review by self-dealing "clear-sailing" and "kicker" clauses; and injunctive relief divorced from the claims of class members. *E.g., Briseño*; *Pearson*; *Roes*; *Pampers*; *Bluetooth*. The Settlement here has all of these telltale signs, a "bevy of questionable provisions." *Briseño*, 998 F.3d at 1018. Exacerbating the problems, the Settlement includes a "clear-sailing" clause under which the defendant agreed not to challenge the attorneys' fees as well as a "kicker" so that any reduction in the fee award reverts to the defendants rather than the class. "The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees." *Bluetooth*, 654 F.3d at 949. And worse, it prevents the court from correcting the misallocation of the settlement relief by returning excessive fees to class members.

The vitality of the class-action mechanism depends on rigorous scrutiny by the judiciary and the application of doctrinal tests that properly align the incentives of class counsel with those of the vulnerable, absent class members whose claims they settle away.

The district court's scrutiny failed to meet this standard and, as a result, it overlooked the red flags of settlement unfairness courts have identified.

## II. The settlement approval cannot stand as a matter of law because class counsel negotiated $2.9 million for themselves in a settlement where the class receives only $1.1 million.

The settlement here required RB to pay up to $8 million to the class. But it established a claims procedure that all but guaranteed that RB would not pay much more than $1 million to hundreds of thousands of class members. Meanwhile, class counsel negotiated for itself a $2.9 million payday, shielded by a clear-sailing agreement and a segregated fund. This settlement is a prime example of a "sharp professional practice" of attorneys "us[ing] the class action procedure for their personal aggrandizement." *Piambino*, 757 F.2d at 1144 (internal quotations and citation omitted).  Every appellate court to consider the 2018 amendments rejects this scenario in a settlement where class members are waiving damages claims.

### A. Disproportionate allocation violates Rule 23(e)(2)(C) even without a showing of actual collusion.

The Settlement is unfair as a matter of law because class counsel's fee award consumes about three fourths of the total benefit. Rule 23 requires courts to consider defects of allocation between the class and class counsel as part of their fairness review. Courts must consider,

among other things, whether "the relief provided for the class is adequate, taking into account . . . the terms of any proposed award of attorney's fees." Fed. R. Civ. Proc. 23(e)(2)(C)(iii). The district court erred as a matter of law in approving the settlement without considering—or even mentioning—this factor at all, much less Frank's objections based on these issues. *Compare Johnson*, 975 F.3d at 1262 (requiring a "reasoned response" "proportional to the specificity" of the objections) (internal quotation omitted) *with* Dkt.75 at 31-35, Dkt.135 at 8-9, 17-22.

Rather than consider Rule 23(e)(2)(C)(iii), the district court held the problematic structuring of attorneys' fees irrelevant because the settlement was "negotiated at arm's length." Dkt.133 at 88. But whether parties negotiate a settlement at arm's length is the subject of Rule 23(e)(2)(B). Satisfying one Rule 23(e)(2) factor does not nullify a settlement's failure to satisfy other Rule 23(e)(2) requirements. *Roes*, 944 F.3d at 1049 n.12.

Impermissible self-dealing can occur without the settling parties explicitly conniving in a smoke-filled room to unfairly treat the class. Arm's-length negotiations protect the interests of the class only with respect "to the amount the defendant will pay, not the manner in which that amount is allocated between the class representatives, class counsel, and unnamed class members." *Pampers*, 724 F.3d at 717.

Thus, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed

24

pursuit of their own self-interests … to infect the negotiations." *Bluetooth*, 654 F.3d at 947. Rather than explicit collusion, there need only be acquiescence for such self-dealing to occur: "a defendant is interested only in disposing of the total claim asserted against it" and "the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." *Id.* at 949 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) and *In re Gen. Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 819-20 (3d Cir. 1995)); *accord Briseño*, 998 F.3d at 1025; *Pearson*, 772 F.3d at 783.

The self-dealing here not only included a disproportionate fee, but a clear-sailing agreement and a segregated fund for the proposed attorneys' fees that would revert to the defendant rather than the class. These are convincing indications of a lawyer-driven settlement *See generally Briseño*, 998 F.3d at 1026-27; *accord Pearson*, 772 F.3d at 786-87; *Piambino*, 757 F.2d at 1122. The combination unfairly insulates the fee request from scrutiny. Charles Silver, *Due Process and the Lodestar Method*, 74 TULANE L. REV. 1809, 1839 (2000) (such a fee arrangement is "a strategic effort to insulate a fee award from attack"); *Briseño*, 998 F.3d at 1027; *Pearson*, 772 F.3d at 786-87. A class member who objects to an excessive fee request would have to do so *pro bono*: because the fee reduction would create no benefit for the class, the class member would not be entitled to attorneys' fees for his success. And segregation shields an excessive fee award from appellate review: an

objector would not have standing to challenge the fee award if she does not also challenge the settlement approval.[6] Thus, the segregation is a "gimmick" that courts should reject as unfair. *Pearson*, 772 F.3d at 786. The district court erred in ignoring the economic reality and effect of this settlement structure, making the upside-down finding that these self-serving clauses were a benefit that provided a "reason[] to *approve* a class action settlement." Dkt.133 at 89.

The Ninth Circuit describes why segregated funds are unfair to class members. "The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees." *Bluetooth*, 654 F.3d at 949. "[T]here is no apparent reason the class should not benefit from the excess allotted for fees." *Id*; *accord Briseño*, 998 F.3d at 1027; *see also Pearson*, 772 F.3d at 786-87 (reversion clause has "strong presumption of [] invalidity"); *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (highlighting reversion as a "questionable provision" that should have been "deleted").

---

[6] *Contrast Silverman v. Motorola, Inc.*, 739 F.3d 956, 957 (7th Cir. 2013) (no standing for objector who only challenges attorneys' fees without challenging settlement when objector cannot benefit from fee reduction) *and Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084 (9th Cir. 2011) (same) *with Bluetooth*, 654 F.3d at 949 n.9 (objectors who challenge disproportionate fee as part of challenge to Rule 23(e) approval of $0 settlement have appellate standing).

The district court allowed its finding that arm's-length negotiations occurred to short-circuit its inquiry over whether class counsel had unfairly treated the class with its own self-dealing. This is by itself reversible error requiring remand even if this Court is unwilling to hold on its face unreasonable a settlement that class counsel proposes to pay the attorneys nearly three times what the class received.

That fees may not be negotiated until after the rest of the settlement should make no difference, and the court erred in thinking otherwise. Dkt.133 at 89. The settling parties are economic actors with rational expectations. Even when parties sever the negotiations over fees, the parties know in advance that those negotiations are coming, that the defendants have a reservation price based on their internal valuation of the litigation, and that every dollar negotiated for the class reduces the amount the defendants are willing to pay class counsel. Because these future fee negotiations are not an unexpected surprise, the overhang of the future fee negotiations necessarily infects the earlier settlement negotiations. *Pearson*, 772 F.3d at 786; *Bluetooth*, 654 F.3d at 948 (separation of fee negotiations from other settlement negotiations does not demonstrate that a settlement with disproportionate fee proposal is fair); *see also* Brian Wolfman & Alan B. Morrison, *Representing the Unrepresented in Class Actions Seeking Monetary Relief*, 71 NYU L. REV. 439, 504 (1996). The district court erred as a matter of law in ignoring

27

this economic reality and thinking that the segregated fund was a benefit to the class, rather than a sign of self-dealing. Dkt.133 at 87-89.

In assessing disproportionality, "[t]he ratio that is relevant … is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman*, 768 F.3d at 630. Here, the class stands to recover less than $1 million, while class counsel sought unopposed, and the court awarded, fees and costs of $2.9 million, about three times as much. Using that *Redman* ratio, class counsel's allocation here was about 72 to 75% of the constructive common fund. Courts regularly reverse settlement approvals where the disproportion is smaller than the share class counsel took for itself here. *Roes,* 944 F.3d at 1051 (fee award of 45% of gross cash fund is "disproportionate"); *Pearson*, 772 F.3d at 781 (69% allocation is "outlandish"); *Redman*, 768 F.3d at 630-32 (55%-67% allocation unfair); *Dennis v. Kellogg, Inc.*, 697 F.3d 858, 868 (9th Cir. 2012) (38.9% fee would be "clearly excessive"). Anything above fifty percent exceeds the "upper limit" of a reasonable fee share of the proceeds. *In re Samsung Top-Load Washing Machine Mktg., Sales Practices & Prods. Liab. Litig.,* 997 F.3d 1077, 1095 (10th Cir. 2021) (quoting *Camden I*, 946 F.2d at 774-75); *Pearson*, 772 F.3d at 782. And here, where the plaintiffs did not even face the risk of a fully litigated motion to dismiss, is not a case in which class counsel has earned the "upper limit." For example, *Briseño* class counsel litigated for years, including winning class certification, defending it on a Rule 23(f) appeal, and defeating a *certiorari* petition on the subject, but

were not entitled to negotiate a settlement with fees larger than the class recovery. 998 F.3d 1014.

Unlike an all-inclusive pure common fund, the settlement here formally segregates class benefits from the attorneys' fees to class counsel, creating a "constructive common fund." *In re Home Depot Inc., Customer Data Sec. Breach Litig.*, 931 F.3d 1065, 1080 (11th Cir. 2019); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 (3d Cir. 1995). Because "the adversarial process" between the settling parties cannot safeguard "the manner in which that [settlement] amount is *allocated* between the class representatives, class counsel, and unnamed class members," the most common settlement defects are ones of allocation. *Pampers*, 724 F.3d at 717 (emphasis in original). Parties cannot wave away allocational issues simply by structuring the settlement as a constructive common fund with segregated fees, rather than a traditional common fund. *See, e.g., Bluetooth*, 654 F.3d at 943; *Pampers*, 724 F.3d at 717.

Far from "challeng[ing]" the constructive common fund approach (Dkt.133 at 92), Frank asked the district court to recognize that reality. Dkt.75 at 31; Dkt.135 at 18, 20-21. But the district court committed simple legal error by including the unclaimed amounts of the $8 million maximum available in the calculation of the constructive common fund. "In mathematical terms, the equation for the percentage method in constructive common-fund cases effectively works like this: the actual

payment to counsel is the product of (1) the percentage the court decides to award, and (2) **the payment to the class** plus the expected payment to counsel (together, the class benefit)." *Home Depot*, 931 F.3d at 1092 (emphasis altered); *accord Pearson*, 772 F.3d at 781.

Appellees may argue that the settlement is fair here because the plaintiffs' claims were weak. *Cf.* Dkt.133 at 44-47. Perhaps the class here was entitled only to a single peppercorn, and RB overpaid by $4 million to settle the case. Such a settlement may satisfy Rule 23(e)(2)(C)(i), but it is still unfair and unreasonable under Rule 23(e)(2)(C)(iii) when the allocation provides only a small fraction of that to the class and reserves the vast majority for the attorneys. If there is a windfall, the class is entitled to share proportionately in it; any other result would perversely reward attorneys more for bringing and settling meritless litigation. "[E]ven a recognition that the substantive claims present a weak case cannot cure a district court's failure to apply the requisite heightened scrutiny to a pre-certification settlement agreement." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609 (9th Cir. 2021). Frank is not making a Rule 23(e)(2)(C)(i) argument that the parties must settle for $40 million or the $8 million made available, or even a single dollar more than the $4 million or so the current settlement provides RB will pay. Rather, his complaint goes to the unfair allocation: if RB is to settle for about $4 million, that must be fairly divided between class members and the

attorneys, instead of the upside-down allocation where attorneys receive about three times as much as the class.

### B. A settlement that pays class members $1,100,000 is not worth the $8 million putatively "made available"; the district court erred under Rule 23(e)(2)(C)(ii) holding otherwise.

The settling parties will likely argue that the attorney fee is not disproportionate because the district court, relying on pre-2018-amendment precedent, valued the settlement at the $8 million "made available." Dkt.133 at 84-85. This was reversible legal error. Rule 23(e)(2)(C)(ii) requires courts to consider the *effectiveness* of distributing relief to the class—the amount class members *actually* receive. And Rule 23(e) has long demanded that settling parties bear their "burden of developing a record demonstrating the settlement distribution is fair, reasonable, and adequate." *Holmes*, 706 F.2d at 1147. Valuing a settlement at the amount made available no matter what class members receive writes the word "effectiveness" out of (e)(2)(C)(ii) and amounts to relieving their parties of their burden to show a fair settlement.

Indeed, every appellate court considering the 2018 Amendments has repudiated the "made available" fiction. *Briseño*, 998 F.3d at 1024-26; *In re Samsung Top-Load Washing Machine Mktg., Sales Practices & Prods. Liab. Litig.*, 997 F.3d 1077, 1094 (10th Cir. 2021). To affirm this

settlement would be to create an inter-circuit split, something this Court does not do "lightly." *Public Health Trust of Dade Cty., Fla. v. Lake Aircraft, Inc.,* 992 F.2d 291, 295 n.4 (11th Cir. 1993).

The district court erred in ignoring the current Rule to focus on inapt pre-2018-amendment precedent. Dkt.133 at 90 (citing *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999); and *Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 628 (11th Cir. 2015)). But it also erred in reading that precedent even if the amendments did not exist.

*Boeing* and *Waters* were cases about *fee disputes* between class counsel and the defendant, not about a class member's challenge to settlement fairness under Rule 23(e). Compromised class-action settlements are different: "There is no fund in the present case and no litigated judgment." *Pearson*, 772 F.3d at 782 (rejecting applicability of *Boeing* in Rule 23(e) inquiry). Unlike an adversarial post-judgment fee proceeding, "the class settlement process is 'more susceptible'…to certain types of abuse." *Holmes*, 706 F.2d at 1147 (quoting *Pettway*, 576 F.2d at 1169). Thus, even if *Boeing* and *Waters* permitted a disproportionate post-judgment fee despite Rule 23(e)(2)(C), they do not consider or speak about the Rule 23(e) fairness of a settlement where class members have complained about indicia of self-dealing. The 2003 amendments creating Rule 23(h) also supersede *Boeing* and *Waters*. *Cf.* Samuel Isaacharoff, *The Governance Problem in Aggregate Litigation*, 81 FORDHAM L. REV.

3165, 3171-72 (2013) (describing *Boeing* as marking an "older line of cases" that eventually "prompted legislative rejection of compensating lawyers on the face value of the settlement, regardless of the take-up rate of the benefits by class members"). The Advisory Committee Notes repeatedly instruct courts applying Rule 23(h) to examine actual results. Notes of Advisory Committee on 2003 Amendments to Rule 23 ("it may be appropriate to defer some portion of the fee award until *actual payouts* to class members are known" (emphasis added)); *id.* ("fundamental focus is the result *actually achieved* for class members" (emphasis added)). "In cases involving a claims procedure …, the court should not base the attorney fee award on the amount of money set aside to satisfy potential claims. Rather, the fee awards should be based only on the benefits actually delivered." Federal Judicial Center, *Manual for Complex Litigation (Fourth)* § 21.71 (2004).[7]

---

[7] *Poertner* affirmed a district court's refusal to award a percentage from a "somewhat illusory" claims fund "because the parties never expected that Gillette would actually pay anything close to that amount." *Poertner v. Gillette Co.*, No. 6:12-cv-803, 2014 WL 4162771, 2014 U.S. Dist. LEXIS 116616, \*14 (M.D. Fla. Aug. 21, 2014). *Poertner* does not supporting crediting the fictional "$8 million" fund as real settlement value. Moreover, even if it hadn't misread *Poertner*, the "district court shouldn't simply cite to one of [this Court's] unpublished opinions as the basis for its decision without separately determining that it is persuasive." *McNamara v. Gov't Emps. Ins. Co.*, 30 F.4th 1055, 1061 (11th Cir. 2022).

Aside from the plain language of the Rule, there are good public-policy reasons to evaluate settlements this way. The claim that potential class benefits should be treated as identical to actual class receipts leads to absurd results. Imagine two hypothetical settlements of the hypothetical class action *Coyote v. Acme Products*:

| Acme Settlement One | Acme Settlement Two |
|---|---|
| Acme Products mails a $50 check to each of one million class members who purchased mail-order rocket skates. | One million class members have the right to fill out a twelve-page claim form requesting detailed product and purchase information, with a notarized signature attesting to its accuracy under penalty of perjury. Class members must personally hand-deliver the claim form between the hours of 7:30 and 9:30 a.m., on December 23, 2021, at Acme's offices in Keokuk, Iowa. Class members with valid claim forms receive $100. |

It should be malpractice for a class attorney to refuse Settlement One and insist on Settlement Two. Nearly every class member, if polled, would prefer Settlement One to Settlement Two. A defendant would clearly prefer Settlement Two to Settlement One as far cheaper. But under the district court's rule of decision, Settlement Two is worth twice as much as Settlement One, and would entitle the class attorneys to twice as much in attorneys' fees. This Court should reject a rule that creates such "perverse incentives." Barbara J. Rothstein & Thomas E. Willging,

*Managing Class Action Litigation: A Pocket Guide for Judges* 13 (Federal Judicial Center 2005); *accord Pearson*, 772 F.3d at 783.

Perhaps the appellees will try to distinguish this case from the hypothetical *Acme* "Settlement Two"; after all, the settlement here permitted claimants to file claims electronically rather than hand-deliver a notarized form. But making that argument would concede the point that a claims process reduces the value of a settlement, and that valuing "potential" benefits is improper without considering the likelihood that a class member will *actually* obtain the benefit. If it is improper to value a settlement by what it makes available because only 0.01% of the class will make claims under the claims process, why is that metric appropriate with a claims process where likely less than 5% of the class *actually* made claims? There is no principled dividing line: the way to judge the validity of a claims process—and to incentivize class counsel to maximize what the class obtains—is to consider the amount that the claims process will *actually* pay the class—the objective "effectiveness" of that process, as Rule 23(e)(2)(C)(ii) calls it. Attorneys' fee awards should "directly align[] the interests of the class and its counsel." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (quotation omitted). If settlement fairness is calculated and class counsel is entitled to the same payment whether the claims process demands burdensome information about the claim, or whether notice is direct or publication, class counsel has no incentive to make the settlement more beneficial to

the class—and will have the incentive to tacitly agree with the defendant to throttle class recovery to maximize its own fee. *Pearson*, 772 F.3d at 783, 787 (quoting *Eubank*, 753 F.3d at 720); *accord Briseño*, 997 F.3d at 1028-29; *see also In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 179 n.13 (3d Cir. 2013) (district court should consider actual receipts to class to determine settlement fairness); AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.13 (2010). Then ultimately, "[w]hen the class attorneys succeed in reaping a golden harvest of fees in a case involving a relatively small recovery, the judicial system and the legal profession are disparaged." *Piambino*, 757 F.2d at 1144 (cleaned up).

Evaluating the fee award based on the effectiveness of the claims process—the money that class members *actually* receive—puts those incentives in exactly the right place. Class counsel will work hard to get the settlement relief into their clients' hands when they derive no benefit from a hypothetical valuation. For example, in *Baby Products*, the settling parties unsuccessfully sought to defend a settlement with a claims process that paid less than $3 million of its $35.5 million settlement fund to the class, arguing as here that it was too difficult to get money to class members without fraud. 708 F.3d at 169-70. On remand, the restructured settlement identified hundreds of thousands of class members that it could issue checks so that there would no longer be an eight-digit remainder. *McDonough v. Toys "R" Us*, 80 F. Supp. 3d 626, 643 (E.D. Pa. 2015). The remand of *Pearson* after the Seventh Circuit

reversed settlement approval also resulted in a new settlement with millions of dollars more in payments to class members. *Pearson v. Target Corp.*, No. 1:11-cv-07972, Dkt. 288 (N.D. Ill. Aug. 25, 2016).

The district court committed reversible legal error in overvaluing the settlement under both Rule 23(e)(2)(C)(ii) and common sense.

**III. The injunction to replace a few words in Neuriva's future marketing does not direct relief to the class, so cannot support final approval of the settlement.**

The purported injunctive relief to the class is neither relief, nor is it directed to the class. The parties must demonstrate that the settlement "secures some adequate advantage for the class." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 195 (5th Cir. 2010). Without class benefit, an injunction cannot make an otherwise disproportionate and inequitable settlement fair.

By any measure, the injunction does little. For two years beginning six months after final approval, defendants agreed to refrain from using certain terms in their marketing and packaging: "clinically proven," "science proved," and "clinically tested and shown." Dkt.116-1 at 9. Instead, the settlement endorses continued use of the phrase "clinically tested" along with RB's existing marketing that the product "fuels 6 indicators of brain health" and that Neuriva was not only clinically tested, but specifically "clinically tested to help support brain health." *Id.* at 9 & 54. Frank advanced two distinct arguments against the value of

the purported injunction. First, the relief does direct any benefit to the class for their *past* injury. Dkt.75 at 28; Dkt.117 at 11-12; Dkt.125 at 4-5; Dkt.135 at 10-11, 14. Separately, Frank argued that the injunction itself would not conceivably benefit *anyone* because it permits the defendants to continue creating the misleading impression that Neuriva has been clinically tested when it has never been. Dkt.135 at 11-13; Dkt.125 at 3-4. The district court addressed only Frank's second argument, concluding that the injunction was not illusory because the term "clinically tested" (which RB will continue to use), has a different meaning than "clinically proven." Dkt.133 79-80.

But the court lost sight of the most important question: whether the injunction *benefits **class members*** who are *past purchasers* of Neuriva. Again here, the district court's failure to provide a "reasoned response" to Frank's argument about the purported prospective injunctive relief at least warrants vacatur. *Johnson*, 975 F.3d at 1262.

The record is clear that the injunction cannot support waiver of class members' claims. Prospective marketing revisions direct no relief to class members, so cannot make a settlement extinguishing their monetary claims fair. While an attorney general might have a state interest in correcting misleading labelling, Rule 23(b)(3) class actions for damages are different. Parties with actual interests at stake—the individuals who comprise the class—are uniquely compelled to waive

their rights for a dubious labelling benefit available equally for everyone—class members, opt outs, and the public at large.

## A. Prospective injunctive relief must benefit the class—not hypothetical future consumers, much less RB's competitors.

"The fairness of the settlement must be evaluated primarily on how it compensates class members—not on whether it provides relief to other people, much less on whether interferes with defendant's marketing plans." *Pampers*, 724 F.3d at 720 (quoting *Synfuel Tech., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006)).

The district court, which ignored Frank's references to *Pampers*, did the reverse. The district found that the injunction will allegedly put "Neuriva products at a disadvantage with its competitors." Dkt.133 at 79. But bluntly, Rule 23 does not mention Neuriva's competitors. Whatever advantage or disadvantage the injunction might have on RB or their competitors does not matter because none of them waive their rights through final approval. Class members do.

One can imagine an unambitious attorney general who claims victory in the defendant's temporary agreement merely to affix the label "clinically tested" to a product that has, in fact, never been clinically tested. But class counsel here does not represent a state or regulator, but real clients who are the parties to the litigation. Under Rule 23, "the concept of class actions serving a 'private attorney general' or other

enforcement purpose is illegal." S. Rep. No. 109-14, at 58-59 (2005); *cf. also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260-69 (1975) (judiciary cannot award fees on non-legislatively sanctioned "private attorney general" model). "The civil judicial system is designed to compensate people who have been wrongfully injured by another's conduct; its purpose is not to supplant the administrative and legislative branches of government through regulation." Victor E. Schwartz & Christopher E. Appel, *Government Regulation and Private Litigation: The Law Should Enhance Harmony, Not War*, 23 B.U. PUB. INT. L.J. 185, 198-99 (2014). Rule 23 is not a substantive bounty-hunting provision that allows class counsel to treat the class as a free-floating entity existing only to permit counsel to operate as a private attorney general. Rule 23 is a procedural joinder device that aggregates real individuals with real claims into a class if certain prerequisites are satisfied. *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010).

The Eleventh Circuit has recognized this truth for decades: "[t]he plaintiff-class, as an entity, [is] not Lead Counsel's client in this case. Rather, Lead Counsel continue[s] to have responsibilities to each individual member of the class even when negotiating." *Piambino*, 757 F.2d at 1144 (internal quotation omitted). The class device works in conjunction with the judiciary in its role of "providing relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036,

1053 (2016) (Roberts, C.J., concurring) (cleaned up). Here, the settlement does not direct injunctive relief to the class, but to future purchasers (class members and non-class members alike) with no benefit to class members who stopped doing business with RB.

The waiver of class claims must be fair. That competitors or the public at large might allegedly obtain benefit from an injunction does not affect fairness under Rule 23 within proceedings bound by Article III jurisdictional limits. Final approval waives the rights of class members, who are *past purchasers* of Neuriva products. "Future purchasers are not members of the class, defined as it is as consumers who have purchased [the product]." *Pearson*, 772 F.3d at 786. Thus, undirected prospective relief, like changing the defendants' marketing cannot make a settlement against the class fair. *See also generally* Erin L. Sheley & Theodore H. Frank, *Prospective Injunctive Relief and Class Settlements*, 39 HARV. J. L. & PUB. POL'Y 769, 778-80 (2016).

A class composed of people who have done discrete business with RB in the past is not served by prospective injunctive relief that can at most only benefit those who do business with RB in the future. Even in the unlikely event that the injunctions impose significant costs on RB, that is not the measure of compensable value. The standard under Rule 23(e) "is not how much money a company spends on purported benefits, but the value of those benefits to the class." *Bluetooth*, 654 F.3d

at 944 (quoting *In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 423 (N.D. Cal. 2009) (Walker, J.)).

Frank does not argue that a class may *never* benefit from injunctive relief. There are many ways that injunctions direct relief to the class. For example, a 23(b)(2) civil-rights claim may seek to change the future behavior of a governmental body or an employer for a class of individuals who have ongoing relationships with the defendant, like prisoners or city residents exercising their speech rights. Consumer class action settlements sometimes provide injunctive relief that directs relief targeted specifically to class members. Similarly, injunctions may provide an improved insurance-claims process or replacements for a defective product. *E.g.*, *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243-44 (11th Cir. 2011); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

Alternatively, class actions can be settled through Rule 23(b)(2) on behalf of consumers who buy Neuriva in the future without waiving their retrospective damages claims. But that is not what happened here. Here, except for the trivial number of class claimants who will receive about a third of what their attorneys will, class members receive nothing that any other consumer receives—the dubious benefit of RB's substitution of "clinically proven" with "clinically tested."

A couple of hypothetical consumer fraud class-action settlements demonstrate the point. Imagine a settlement of *Benes v. Kramer Non-Fat*

*Yogurt*, where a class sues a shop selling "non-fat yogurt" that turns out to be full of fat. *Cf.* Larry David, "The Non-Fat Yogurt," *Seinfeld* (NBC Nov. 4, 1993). If the parties settled for injunctive relief under which the defendant agreed to provide non-fat yogurt in the future, that would be of no benefit to the class for their ***previous injuries***—even if there happened to be some overlap between the class members and the set of people who purchased non-fat yogurt in the future. The class members only benefit to the extent that they make additional purchases from the defendant, and that benefit is presumably reflected in the price they pay for those new purchases.

Another example: imagine the hypothetical consumer fraud class action *Gatsby v. West Egg*, where a class sues over West Egg selling dozen-egg containers that have only ten eggs. If the parties settled with injunctive relief that required West Egg to include at least twelve eggs in every "dozen eggs" package, that again provides no benefit to the class for their previous injuries, even if, once again, there happened to be some overlap between the class members and the set of people who purchased West Egg packages in the future.

A real counterexample may make this principal more concrete. The R&R cited *Faught* for the generic proposition that "courts should consider **changes to a defendant's business practices**" (Dkt.133 at 94, emphasis in original). But the settlement in *Faught*—unlike in this case and the hypotheticals above—provided injunctive relief *specifically*

43

*directed* to class members. The class in *Faught* consisted of insurance policy holders allegedly wrongfully denied claims by technicians with financial incentives to deny claims. 668 F.3d at 1237. To remedy this, the injunction required the defendant to accept claims resubmitted by all past and present policy holders, to remove incentives for reviewers to deny claims, and to set up a review board for denied claims. *Id.* at 1238. Such changes direct retrospective relief specifically to class members, even if some of the changes by chance also benefit future customers. The settlement here is more like a hypothetical settlement enjoining an insurance company from marketing the impartial adjusters reviewing claims. Perhaps this could be called a public victory, but in the long run, crediting dubious social benefits in class-action settlements would lead to worse social results. Under the hypothetical *Faught* marketing injunction settlement, the defendant would remain free to pay technicians to deny claims as long as they change some easily-substitutable advertising language. Requiring directed class relief provides stronger deterrence than easily manipulated revisions to product packaging.

The district court misunderstood Frank's argument on this issue, finding the injunction "should therefore be factored into the overall analysis of the settlement." Dkt.133 at 4. Frank did not argue otherwise, but simply that *this* injunction fails to direct relief to class members. The

injunction here does not provide meaningful benefits, unlike *Faught* and some other decisions cited by the district court.[8]

The district court attempts to rationalize the injunction because other courts declined to grant contested motions to grant injunctions against other products, but this cannot not justify waiver of class claims in *this* case. The district court tacitly acknowledges the injunction's infinitesimal value when it says that it "must be considered through the lens of the 'range of possible relief' that Plaintiffs might have received." Dkt.133 at 80-81. But the risks of proceeding with litigation—one of the *Bennett* factors and a query under Rule 23(e)(2)(C)(i)—are distinct from whether the terms of a settlement are fair under Rule 23(e)(2)(C)(iii). The settlement waives damages claim, including the claim that "each class member paid substantially more than the market value represented by the price bargained for." Dkt.51 at 37. That other courts may have denied injunctions may mean the injunctive component of the settlement satisfies Rule 23(e)(2)(C)(i), but does not excuse the disproportion forbidden by Rule 23(e)(2)(C)(iii).

---

[8] *E.g.*, Dkt.133 at 72-73 (citing *Wilson v. EverBank*, No. 14-CIV-22264, 2016 U.S. Dist. LEXIS 15751, at *14 (S.D. Fla. Feb. 3, 2016) (enjoining defendant lender from imposing lender-placed insurance on mortgage-paying class)); *Janicijevic v. Classica Cruise Operator, Ltd.*, No. 20-cv-23223, 2021 U.S. Dist. LEXIS 95561, at *3 (S.D. Fla. May 19, 2021) (creating process for wage dispute resolution during the pandemic)).

Like this case, the settlement in *Pampers* provided a claims process of comparatively little realized value. 724 F.3d at 719. As here, the settling parties tried to rationalize their fee-heavy deal based on an injunction to add statements about preventing rash to Pampers packaging and online. *Id*. at 719-20. The Sixth Circuit first observed that the several changes required by that settlement had negligible value to any consumer. *Id.* The defendant argued that every square centimeter of their packaging was valuable to the defendant, but the Sixth Circuit retorted that "'The fairness of the settlement must be evaluated primarily based on how it *compensates class members*'—not on whether it provides relief to other people, much less on whether it interferes with the defendant's marketing plans." *Id*. at 720 (quoting *Synfuel Technologies, Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 654 (7th Cir. 2006)).

Similarly, in *Synfuel,* the Seventh Circuit rejected a settlement that included changes to the defendant shipping company's billing practices. 463 F.3d at 654. The Seventh Circuit found that "future customers who are not plaintiffs in this suit [] will reap most of the benefit from these changes." *Id*. The Seventh Circuit noted that the class complaint specifically sought money for overcharges and "the fairness of the settlement must be evaluated primarily based on how it compensates class members for these past injuries." *Id.*

46

The injunction here is also less material than the one vacated in *Koby v. ARS Nat'l Servs.*, 846 F.3d 1071 (9th Cir. 2017). There, the parties argued that a class would benefit from the modification of debt collection practices by the defendant, but in fact the injunction "was worthless to most class members." 843 F.3d at 1079. As here, the *Koby* injunction was not worthless to *all* class members. This is because the injunction was prospective: it applied to all *future* debtors contacted by the defendant, whether or not they were class members, which was "an obvious mismatch between the injunctive relief provided and the definition of the proposed class." *Id*. A similarly obvious mismatch exists in this case between the proposed injunctive relief benefitting at best *future* purchasers of Neuriva and the class of *past* purchasers. The parties must show the value to the class, not merely the value to the general public.

The potential label changes have no settlement value because they in no way compensate class members for these alleged past injuries. Because the settlement provides no directed relief to the class, it is against the interests of unnamed class members and is not fair, reasonable, or adequate. "There is no evidence that the relief afforded by the settlement has any value to the class members, yet to obtain it they had to relinquish their right to seek damages in any other class action." *Koby*, 846 F.3d at 1079.

47

Injunctive relief cannot just be free-flowing "good"; the fairness of a settlement is determined by the benefit **to the class**—the putative clients of class counsel. An open-ended social benefit—assuming any exists—does not provide relief to *class members*, and thus it's unfair to ask them to foot the bill for such a settlement by surrendering their rights.

The prospective relief of labeling changes is analogous to *cy pres* relief, which courts are appropriately wary of. *E.g., Marek v. Lane*, 571 U.S. 1003, 1006 (2013) (expressing "fundamental concerns" raised by *cy pres*) (Roberts, C.J., respecting denial of certiorari). In *cy pres* settlements, monetary judgments are directed to third-party charities or other non-party beneficiaries who have not waived their rights. Assuming without conceding that a prospective label change benefits anyone, this presents the problem as *cy pres* where the actual parties with justiciable controversies find the settlement benefit of their claims diverted to a different, if possibly overlapping, group—those who might purchase of examine Neuriva products in the future. *Cf. Pearson*, 772 F.3d at 781 (the indirect benefit of *cy pres* is not a benefit to the class). Those who purchased Neuriva in the past and won't purchase it again—including those who feel defrauded—receive no conceivable benefit from the injunction.

In short, the injunction directs no relief to the class as a whole, so it cannot be the fair consideration for a settlement waiving their damages claims.[9]

## B. That the lawsuit precipitated an injunction is not enough—the injunction must be valuable to the class.

The district court found that the "causation link" of the litigation to the injunction "alone proves up the injunctive relief's value under *Poertner*." Dkt.133 at 74 (citing 618 F. App'x at 629). This conclusion was

_____

[9] Vacating the settlement approval, and thus the injunctive relief, will not prejudice future Neuriva customers or other non-class members. The injunction allows Neuriva to continue to market to consumers the way named plaintiffs complained about. The exemplary packaging attached to settlement says that Neuriva's "ingredients are … clinically tested to help support brain health," an expression that only makes sense if a consumer reads it as "tested *and shown* to help." Dkt.116-1 at 54. The term "clinically tested" can "imply there was scientific support for these claims." *Mullins v. Direct Dig., L.L.C.*, 795 F.3d 654, 673 (7th Cir. 2015) (affirming certification of class seeking to prove consumer fraud on this basis). Nearly all of RB's allegedly "uniformly deceptive advertising and marketing" (Dkt.51 at 2 (¶ 6)) remain in place. RB may still claim Neuriva is "backed by science." *Id*. RB continues to tout "improved brain performance … in the areas of Focus, Memory, Learning, Accuracy, Concentration, and Reasoning." Compare *id*. ¶ 7 with Dkt.116-1 at 54. Neuriva packaging still says it's "time to brain better." *Id*. at 3 ¶ 8. RB still cites the same studies in the way that the Complaint calls "disturbingly misleading." *Id*. at 3-4 ¶¶ 9-12. To the extent plaintiffs' claims had merit, the settlement pays class attorneys $2.9 million to put a judicial stamp of approval on the marketing.

49

an error of law based on non-binding authority rather than Rule 23(e)(2), which requires fairness between the "effectiveness of any proposed method of distributing relief" and "attorneys' fees."

The court abused its discretion and committed an error of law if it read this Court's unpublished *Poertner* decision for the proposition that the "causation link … alone proves up the injunctive relief's value under *Poertner*." Dkt.133 at 74 (citing 618 F. App'x at 629 and *Ferron*, 2021 WL 2940240, at *11). The district court erred as a matter of law because it relied on an unpublished decision from this Court. A "district court shouldn't simply cite to one of our unpublished opinions as the basis for its decision without separately determining that it is persuasive." *McNamara v. Gov't Emps. Ins. Co.*, 30 F.4th 1055, 1061 (11th Cir. 2022). Here, the district court sometimes cites *Poertner* only as an example of a settlement where certain features existed, but it erroneously appears to treat it as controlling law on the point of causation. Dkt.133 at 74.[10]

---

[10] Even if it were controlling law, *Poertner* contains no categorical presumption that litigation-derived injunctions have value. The *Poertner* appellants did not preserve the argument that the injunction was valueless and evinced inadequate representation. 618 F. App'x at 630 n.5. An unpublished affirmance based on waiver does should not control any outcome in this case.

Causation is a necessary but not sufficient requirement.[11] Imagine that a settlement were to change the typeface or color of a product's packaging—not *every* change inspired by litigation counts as a benefit. The district court appears to understand that *Poertner* does not stand for such a sweeping proposition when it also finds the injunction to be "not merely cosmetic, nor … inconsequential." Dkt.133 at 74. But neither *Poertner* nor any other authority stands for this proposition.

The fairness of a settlement must be benchmarked from the value of relief to class members, and whether the relief is fair given terms such as the attorneys' fee request. The district court did not do this, instead finding fees proportional to the hypothetical amount of money made available, as discussed in Section II.

A settlement that waives damages claims and disproportionately benefits class counsel cannot be fair and cannot be salvaged by an injunction that directs no marginal benefit to the class over non-class members. When, as here, class counsel favor themselves over their clients, a district court has a legal obligation to reject the settlement.

---

[11] The district court found testimony on causation "unrebutted" (Dkt.133 at 74), but Frank had challenged it, observing that the defendants had commissioned an expensive marketing campaign that omitted "clinically proven" more than a year before the Settlement would have required them to cease that marketing. Dkt.117 at 8-11.

## Conclusion

The district court's final judgment granting settlement approval under Fed. R. Civ. Proc. 23(e) must be vacated.

Dated:  June 14, 2022                    Respectfully submitted,

*/s/ Theodore H. Frank*

Theodore H. Frank
John M. Andren
HAMILTON LINCOLN LAW INSTITUTE
  CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC 20006
Telephone: (703) 203-3848
Email:  ted.frank@hlli.org

*Attorneys for*
    *Appellant Theodore H. Frank*

# Addendum of Statutes and Rules

**Federal Rule of Civil Procedure 23. Class Actions.**
**(e)    Settlement, Voluntary Dismissal, or Compromise.**

The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

…

(2) *Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

…

## Certificate of Compliance

This brief complies with the type-volume limitation of Fed. R. App. Proc. 32(a)(7)(B) because this brief contains 11,817 words, excluding the parts of the brief exempted by 11th Cir. R. 32-4, as counted by Microsoft Word.

This brief complies with the typeface requirements of Fed. R. App. Proc. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Executed on June 14, 2022        */s/ Theodore H. Frank*
                                  Theodore H. Frank