Case No. 22-11232-AA

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

DAVID WILLIAMS, CAROLL ANGLADE, HOWARD CLARK,
THOMAS MATTHEWS, and MARTIZA ANGELES, individually and
on behalf of all others similarly situated
*Plaintiffs-Appellees,*

v.

RECKITT BENCKISER LLC and RB HEALTH (US) LLC,
*Defendants-Appellees*

THEODORE H. FRANK,
*Objector-Appellant*

Appeal from the United States District Court
for the Southern District of Florida
No. 1:20-cv-23564-MGC

# RESPONSE BRIEF OF DEFENDANTS-APPELLEES RECKITT BENCKISER LLC and RB HEALTH (US) LLC

Charles C. Sipos
PERKINS COIE LLP
1201 Third Ave.
Suite 4900
Seattle, WA 98101
Telephone: (206) 359-8000
CSipos@perkinscoie.com

David T. Biderman
PERKINS COIE LLP
1888 Century Park East
Suite 1700
Los Angeles, CA 90067
Telephone: (310) 788-9900
DBiderman@perkinscoie.com

Melissa Pallett-Vasquez
Lori P. Lustrin
BILZIN SUMBERG BAENA PRICE &
AXELROD, LLP
1450 Brickell Ave.
Floor 23
Miami, FL 33131
Telephone: (305) 374-7580
LLustrin@bilzin.com
MPallett@bilzin.com

*Counsel for Defendants-Appellees
Reckitt Benckiser LLC and RB Health
(US) LLC*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Defendant-Appellees Reckitt Benckiser LLC, and RB Health (US) LLC, pursuant to Fed. R. App. P. 26.1 and Eleventh Circuit Local Rule 28-1(b), hereby file their certificate of interested persons and corporate disclosure statement as follows.

Reckitt Benckiser LLC, a Delaware limited liability company, is a wholly-owned subsidiary of Reckitt Benckiser USA (2013) LLC, a Delaware limited liability company, which is a wholly-owned subsidiary of RB USA Holdings LLC, a Delaware limited liability company. RB USA Holdings LLC is a wholly-owned subsidiary of Reckitt Benckiser (Hygiene) Holdings Limited, a private limited company registered in England and Wales, which is a wholly-owned subsidiary of Reckitt Benckiser Limited, a private limited company registered in England and Wales, whose corporate parent is Reckitt Benckiser Group plc, a public limited company organized under the laws of England and Wales. Reckitt Benckiser Group plc has no parent corporations. As of the current date, no shareholder owns 10% or more of Reckitt Benckiser Group plc's stock.

RB Health (US) LLC, a Delaware limited liability company, is a wholly-owned subsidiary of Mead Johnson Nutrition Company, a

Delaware corporation, which is a wholly owned subsidiary of MJ USA Holdings LLC, a Delaware limited liability company. MJ USA Holdings LLC is a wholly-owned subsidiary of MJ UK Holdings Limited, a company registered in England and Wales, which is a wholly-owned subsidiary of Reckitt Benckiser (Health) Holdings Limited, a private limited company registered in England and Wales, which is a wholly-owned subsidiary of Reckitt Benckiser Limited, a private limited company registered in England and Wales, whose corporate parent is Reckitt Benckiser Group plc, a public limited company organized under the laws of England and Wales. Reckitt Benckiser Group plc has no parent corporations. As of the current date, no shareholder owns 10% or more of Reckitt Benckiser Group plc's stock.

Pursuant to Cir. R. 28-1(b) and Cir. R. 26.1-2, Reckitt Benckiser LLC and RB Health (US) LLC further state that the list of trial judges, attorneys, persons, association of persons, firms, partnerships, and corporations believed to have an interest in the outcome of this case or appeal filed by Objector-Appellant Theodore Frank is complete. Defendant-Appellees do not have additional parties to add to Mr. Frank's list.

/s/ *Charles C. Sipos*
Charles C. Sipos
PERKINS COIE LLP
1201 Third Ave.
Suite 4900
Seattle, WA 98101
Telephone: (206) 359-8000
CSipos@perkinscoie.com

David T. Biderman
Perkins Coie LLP
1888 Century Park East
Suite 1700
Los Angeles, CA 90067
Telephone: (310) 788-9900
DBiderman@perkinscoie.com

Melissa Pallett-Vasquez
Lori P. Lustrin
BILZIN SUMBERG BAENA PRICE &
AXELROD, LLP
1450 Brickell Ave.
Floor 23
Miami, FL 33131
Telephone: (305) 374-7580
LLustrin@bilzin.com
MPallett@bilzin.com

*Counsel for Defendants-Appellees*
*Reckitt Benckiser LLC and RB*
*Health (US) LLC*

## STATEMENT REGARDING ORAL ARGUMENT

The district court's decision approving the parties' class action settlement, which is subject to review under the abuse of discretion standard, is thorough in its analysis and well-reasoned. The district court's approval of the settlement was premised on Eleventh Circuit law and the applicable provisions of Fed. R. Civ. P. 23. Defendants Reckitt Benckiser LLC and RB Health (US) LLC ("Reckitt") therefore does not believe that oral argument will be necessary to aid the decision-making process. It would nonetheless be pleased to participate in oral argument if this Court nonetheless believes argument would be of use.

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons and Corporate Disclosure ................ C-1

Statement Regarding Oral Argument ........................................................ i

Table of Contents ..................................................................................... ii

Table of Citations ................................................................................... iv

Statement of Jurisdiction ....................................................................... vii

Introduction ............................................................................................. 1

Statement of the Issues ............................................................................ 3

Statement of the Case .............................................................................. 4

I.     Factual Background. ........................................................................ 4

II.    The District Court Conducted Extensive Preliminary and Final Approval Proceedings. ............................................................ 8

      A.    The Magistrate Judge Required the Parties to Provide Extensive Briefing Regarding the Proposed Class Settlement. ..................................................... 8

      B.    The Magistrate Judge Issued a Thorough R&R Recommending Final Approval, Adopted in Full by the District Court. ............................................................. 12

Standard of Review ................................................................................ 15

Summary of Argument ........................................................................... 16

Argument ............................................................................................... 18

I.     The District Court's Approval of the Class Settlement Was Not an Abuse of Discretion. ............................................................ 18

# TABLE OF CONTENTS
## (continued)

**Page**

    A.    The District Court Applied the Correct Legal
Standard to Its Review of the Settlement................................19

        1.    The district court conducted a proper Rule
23(e)(2)(C)(ii) analysis. ..................................................22

        2.    The district court conducted a proper Rule
23(e)(2)(C)(iii) analysis. ................................................28

    B.    The District Court Properly Evaluated the
Settlement's Injunctive Relief When Approving
the Settlement. ....................................................................30

Conclusion............................................................................................37

Certificate of Compliance ....................................................................40

Certificate of Service ...........................................................................41

# TABLE OF CITATIONS

**Page(s)**

## CASES

*Aldana v. Del Monte Fresh Produce N.A., Inc.*,
578 F.3d 1283 (11th Cir. 2009) .......................................................... 15

*Bennett v. Behring Corp.*,
737 F.2d 982 (11th Cir. 1984) ..................................................... *passim*

*Briseño v. Henderson*,
998 F.3d 1014 (9th Cir. 2021) ................................................ 24, 27, 28

*Carter v. Forjas Taurus, S.A.*,
701 F. App'x. 759 (11th Cir. 2017) ..................................................... 26

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ............................................................. 35

*Dikeman v. Progressive Exp. Ins. Co.*,
312 F. App'x 168 (11th Cir. 2008) ...................................................... 18

*Faught v. Am. Home Shield Corp.*,
668 F.3d 1233 (11th Cir. 2011) .......................................................... 15

*Ferron v. Kraft Heinz Foods Co.*,
2021 WL 2940240 (S.D. Fla. July 13, 2021) .............................. *passim*

*Hanley v. Tampa Bay Sports & Ent. LLC*,
2020 WL 2517766 (M.D. Fla. Apr. 23, 2020) ...................................... 21

*In re Blue Cross Blue Shield Antitrust Litig.*,
2020 WL 8256366 (N.D. Ala. Nov. 30, 2020) ...................................... 21

*In re Checking Acct. Overdraft Litig.*,
2020 WL 4586398 (S.D. Fla. Aug. 10, 2020) ................................. 21, 23

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
999 F.3d 1247 (11th Cir.), *cert. denied sub nom. Huang v.*
*Spector*, 142 S.Ct. 431 (2021) .................................................. 15, 20, 21

iv

## TABLE OF CITATIONS
### (continued)

**Page(s)**

*Jackson v. Fastenal Co.*,
   2021 WL 5755583 (E.D. Cal. Dec. 3, 2021) ........................................ 24

*Janicjevic v. Classica Cruise Operator, LTD.*,
   2021 WL 2012366 (S.D. Fla. May 20, 2021) ...................................... 32

*Leverso v. SouthTrust Bank of Ala., N.A.*,
   18 F.3d 1527 (11th Cir. 1994) ...................................................... 12, 33

*London v. Wal-Mart Stores, Inc.*,
   340 F.3d 1246 (11th Cir. 2003) ........................................................ 16

*Marty v. Anheuser-Busch Cos., LLC*,
   2015 WL 6391185 (S.D. Fla. Oct. 22, 2015) ..................................... 32

*Moreno v. Capital Bldg. Maintenance & Cleaning Servs.,
   Inc.*,
   2021 WL 4133860 (N.D. Cal. Sept. 10, 2021) .............................. 24, 25

*Morris v. US Foods, Inc.*,
   2021 WL 2954741 (M.D. Fla. May 17, 2021) ............................... 21, 23

*Paulus v. Real Green Sys., LLC*,
   2021 WL 8946174 (S.D. Fla. Jul. 28, 2021) ...................................... 27

*Poertner v. Gilette Co.*,
   618 F. App'x 624 (11th Cir. 2015) ............................................. *passim*

*SEB Inv't Mgmt. AB v. Symantec Corp.*,
   2022 WL 409702 (N.D. Cal. Feb. 10, 2022) ....................................... 24

*Smith v. Costa Del Mar, Inc.*,
   2021 WL 4295282 (M.D. Fla. Sept. 21, 2021), *appeal filed*
   (No. 22-10666) ............................................................................. 21, 29

*Waters v. Int'l Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) ........................................................ 26

# TABLE OF CITATIONS
## (continued)

**Page(s)**

*Wilson v. EverBank,*
2016 WL 457011 (S.D. Fla. Feb. 3, 2016) ..................................... 30, 33

**RULES**

Fed. R. Civ. P. 12 .................................................................... 5, 6, 33

Fed. R. Civ. P. 23 ................................................................ 1, 16, 21, 22

Fed. R. Civ. P. 23(e) ...................................................................... 21

Fed. R. Civ. P. 23(e)(2) ............................................................ *passim*

Fed. R. Civ. P. 23(e)(2)(C) ........................................................ *passim*

Fed. R. Civ. P. 23(e)(2)(C)(ii) .................................................... *passim*

Fed. R. Civ. P. 23(e)(2)(C)(iii) ................................................... *passim*

Fed. R. Civ. P. 23(h) ...................................................................... 29

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the matter below was a class action where the amount-in-controversy exceeded $5 million and class members were citizens of states other than the corporate citizenship of Defendants-Appellees Reckitt Benckiser LLC and RB Health US (LLC). Objector-Appellant Appendix ("Frank App."), Tab No. 51 at ¶ 27.

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. Objector Frank timely filed an appeal from the district court's order entering final approval of the Defendants' and Plaintiffs' class action settlement agreement. Frank App., Tab Nos. 140–41 (March 16, 2022, final approval order and April 15, 2022, notice of appeal by Objector Frank).

## INTRODUCTION

In reviewing and finally approving the parties' class action settlement, the district court did exactly what this Court expects: The district court conducted a thorough approval process, closely scrutinized key terms of the settlement, applied Eleventh Circuit precedent, and then—in a detailed 108-page written ruling—reached a conclusion that the deal was fair to the putative class. Nothing that the district court did, in process or in substance, constitutes an abuse of discretion.

The correctness of the district court's decision is borne out by the terms of the deal itself. The settlement between Plaintiffs-Appellees and Defendants-Appellees Reckitt Benckiser LLC and RB Health (US) LLC ("Reckitt") provided a $8 million pool of funds for consumers to receive partial—or in some cases full—refunds for their purchase of the disputed products at issue: Reckitt's Neuriva brain health supplements. Reckitt also agreed to change the labeling of Neuriva, removing from the label the phrase "Clinically Proven," which was the principal labeling statement objected to by Plaintiffs. And Reckitt did so even though it has significant, competent, and reliable scientific evidence substantiating Neuriva's labeling. The settlement was thus overwhelmingly fair and reasonable.

Objector-Appellant Ted Frank ("Frank"), the lone objector below, nonetheless maintains that the district court abused its discretion in approving the class settlement, principally because Plaintiffs' counsel received what Frank believes was a disproportionate $2.9 million fee award. But the district court extensively evaluated this fee award, approving it based on Eleventh Circuit law that properly considers the value of the settlement itself—here, $8 million—when deciding whether the amount of the requested fee is permissible.

Frank insists this analysis did not account for class approval standards set forth in Fed R. Civ. P. 23(e)(2)(C), which he contends the district court "failed to evaluate." But the district court expressly cited the standards set forth in Rule 23(e)(2)(C) to reach its approval decision, and substantively evaluated the notice, the process for paying claims, and the fees awarded. Nothing in the subsections of Rule 23(e)(2)(C)(ii) or (iii) relied on by Frank required more. And certainly no Eleventh Circuit decision, or decision from any other Circuit, interprets these subsections of the Rule to impose the *per se* invalidation principles Frank asks this Court to adopt when evaluating class settlements that provide monetary relief based on claims that class members submit.

Frank also objects to the district court's consideration of the settlement's injunctive relief when assessing the overall fairness of the deal to the class. Here again, the district court was following a consistent body of law from within this Circuit holding that a labeling change compelled by litigation is evidence that the injunction has value to the class. But here there was more. Reckitt also submitted expert testimony below proving up the injunctive relief's value to Neuriva purchasers. The district court's reliance on the law and the evidence was likewise not an abuse of discretion.

The judgment of the district court should be affirmed.

## STATEMENT OF THE ISSUES

1.    Did the district court abuse its discretion when it approved the parties' class action settlement where: (a) the district court applied Eleventh Circuit precedent establishing the standards for class settlement approval; (b) it expressly included within that review the factors identified in Rule 23(e)(2)(C); and (c) it articulated that reasoning in an 108-page decision explaining its approval rationale?

2.    Did the district court abuse its discretion when, as part of its overall assessment of the fairness of the parties' class settlement, it

considered the value of injunctive relief provided by the settlement agreement, which mandated a change to Neuriva's labels?

## STATEMENT OF THE CASE

### I.    Factual Background.

The litigation below concerned Reckitt's brain health nutritional supplement sold under the brand name Neuriva. Objector-Appellant Appendix ("Frank App."), Tab No. 51 at ¶ 1. Neuriva's active ingredients have been repeatedly shown in clinical studies to improve certain aspects of cognitive functioning, including focus, accuracy, memory, learning, and concentration. Defendants-Appellees' Appendix ("Reckitt App."), Tab Nos. 62 at 4–14, 86 at 17–23. Neuriva was thus labeled as having "Clinically Proven" ingredients. *See, e.g.*, Frank App., Tab No. 51 at ¶ 9 (showing sample labels). Beginning in summer of 2020, Plaintiffs filed putative class actions in California, New York, and the Southern District of Florida challenging that "Clinically Proven" claim. Frank App., Tab No. 116-1 at II.A–B. The principal allegation in each case was that because the Neuriva products themselves had not been clinically tested— only their active ingredients—that it was misleading under various state consumer protection laws to label the products as "Clinically Proven." *See id.*

Reckitt responded vigorously, filing motions to dismiss in California and Florida raising various defenses including lack of substantiation, federal preemption, and failure to plausibly allege that a "reasonable consumer" would be deceived by Neuriva's labels. *Id.* at II.C–D; *see also, e.g.*, Reckitt App., Tab No. 39 (Motion to Dismiss in S.D. Fla. *Williams* Action). Those motions were supported by the considerable underlying science substantiating and supporting the "Clinically Proven" claim on Neuriva's labels. *See generally id.* (citing studies in concurrently filed Request for Judicial Notice). Similar challenges to "clinically proven" claims in cases involving dietary supplements had not survived Rule 12 motions, thus placing the actions at meaningful risk of failure at the pleading stage. Frank App., Tab No. 133 at 80.

Simultaneous with its defense of the actions, counsel for Reckitt engaged in settlement discussions with Plaintiffs' counsel regarding potential resolution of the actions. Frank App., Tab No. 116-1 at II.F. Ultimately, after two lengthy mediations the parties reached agreement in January 2021 to terms of a nationwide class settlement to resolve Plaintiffs' claims. Reckitt App., Tab No. 47. Plaintiffs filed an amended complaint in the district court below including as parties the named plaintiffs from the New York and California actions, and on February 5,

2021, Plaintiffs filed an unopposed motion for preliminary approval of class settlement. Frank App., Tab No. 51; Reckitt App., Tab No. 52.

Under the terms of the settlement Reckitt made available $8,000,000 in monetary relief to the settlement class for refunds associated with Neuriva purchases. Frank App., Tab No. 116-1 at IV.B. Purchasers of Neuriva who provided proof of purchase could receive up to $32.50 in refunds for each of their Neuriva purchases, up to $65.00. *Id.* Class members without proof of purchase could receive up to $5.00 per claim up to a household maximum of $20.00. *Id.* The settlement obligated Reckitt to pay all claims under the $8,000,000 threshold although Reckitt was only obligated to make payment on claims made (*i.e.*, if the claims submitted were below $8,000,000 Reckitt was only obligated to pay that amount). *Id.*

The settlement agreement permitted Plaintiffs' counsel to seek fees and expenses of up to $2.9 million, and Reckitt agreed not to contest an attorneys' fees request for that amount. *Id.* at V.A. Reckitt denies all liability in the settlement, which was entered into to avoid the expense, uncertainty, and distraction of further litigation. *Id.* at II.J.

For processing valid claims submitted by class members, the settlement agreement called for the establishment of a settlement

website where claimants could submit claims electronically (*i.e.*, online) in addition to a mail-in process. *Id.* at VII. Notice of the settlement was likewise distributed online, including through social media channels and the establishment of the aforementioned website that was given the URL www.RBsettlement.com. *Id.* Prior to final approval, the class action administrator issued a second round of online notices. Reckitt App., Tab No. 86-2. This additional notice was even further targeted at social media channels where, based on the first round of notice, it appeared that putative class members would be most likely to respond. *Id.*

The settlement agreement preliminarily approved by the district court included injunctive relief that prevented Reckitt for a period of two (2) years from using the claim "Clinically Proven" or "Science Proved" in the marketing and labeling of Neuriva. *Id.*, Tab No. 52-1 at IV.A.1. Reckitt was permitted instead to use the terms "Clinically Tested" or "Science Tested." *Id.* In the first iteration of the settlement agreement Reckitt would have been permitted to also use the term "shown" in connection with its labeling. *Id.* As ultimately agreed to in an amended settlement agreement, however, the injunctive relief likewise prohibited the use of the term "shown" such that Reckitt's labeling is limited to use of the term "Clinically Tested" or "Science Tested" in connection with

Neuriva's active ingredients. Frank App., Tab No. 116-1 at IV.A.1; *see also infra* Argument Part I.B.

## II. The District Court Conducted Extensive Preliminary and Final Approval Proceedings.

Settlement approval proceedings were referred by the district court to the assigned Magistrate Judge. Frank App., Tab No. A. As detailed below, those proceedings were extensive.

### A. The Magistrate Judge Required the Parties to Provide Extensive Briefing Regarding the Proposed Class Settlement.

On April 23, 2021, the Magistrate Judge issued an order preliminarily approving the settlement. *Id.*, Tab No. 57. Several days later, however, he entered a separate order calling for the parties to provide additional briefing and authority as to the appropriateness of the settlement's injunctive relief. *Id.*, Tab No. 58. In response, Reckitt's submission pointed to, among other sources of information, the overwhelming body of science supporting Neuriva's claims of efficacy and evidencing that Neuriva's active ingredients had been repeatedly "tested." Reckitt App., Tab No. 62 at 4–14. Reckitt's briefing was supported by the affidavit of an independent medical expert, Dr. Gary W.

Small, who reviewed and concurred in the scientific literature supporting Neuriva's marketing claims. *Id.*, Tab No. 62-1.

On July 26, 2021, Frank filed an objection to the class settlement and requested to appear at the scheduled August 17, 2021, final approval hearing. Frank App., Tab No. 75.[1] Frank objected on grounds that the attorneys' fees permitted under the agreement was too great in relation to the potential class recovery, and that the injunctive relief did not provide the class with value. *Id.* at 4–28. Frank was represented by counsel the Hamilton Lincoln Law Institute's Center for Class Action Fairness ("CCAF"). *Id.* at 2. CCAF is a firm in which Frank serves as a lawyer and Director of Litigation, with a practice focused on filing class settlement objections. *Id.* Frank was the sole objector to the settlement. *See generally id.*, Tab No. A.

Leading up to the fairness hearing, the Magistrate Judge issued four intervening orders calling for further briefing pertaining to the class settlement and its injunctive relief and attorney fee provisions. Frank

---

[1] An amicus brief was also filed by Truth in Advertising, Inc. ("TINA"), critical of the injunctive relief and fees components of the settlement. Frank App., Tab No. 83. The district court considered TINA's submissions during approval proceedings (*id.*, Tab No. A at Dkt. Nos. 83, 92, 114, 122), and TINA has not subsequently appeared in this appeal as *amici* or otherwise.

App., Tab No. A at Dkt. Nos. 58, 84, 95–96. The parties and Frank submitted substantial additional briefing in response to these requests. *Id.* at Dkt. Nos. 61–62, 92, 98–102. The August 17 fairness hearing ran to nearly three hours. *Id.* at Dkt. No. 103. Following the hearing, the Magistrate Judge requested even further briefing, again pertaining to the injunctive relief component of the settlement. *Id.* at Dkt. Nos. 105, 121, 131.

Much of the briefing addressed whether the injunctive relief component of the settlement ought to allow continued use of the term "shown" in describing the scientific proof supporting the efficacy of Neuriva's active ingredients, in light of its agreement to refrain from the use of the term "Clinically Proven." *Id.* at Dkt. Nos. 75, 83, 100, 114, 117. Ultimately this issue was mooted as the parties entered into an amended settlement agreement that requires Neuriva to forego use of the term "shown" in connection with marketing and labeling describing the scientific proof substantiating Neuriva's benefits and is limited instead to use of the term "Clinically Tested." *Id.* at Dkt. No. 116; *see* Frank App., Tab No. 116-1 at IV.A.1.

Moreover, Reckitt provided substantial evidence to prove up the value of the injunction prohibiting it from using the term "Clinically

10

Proven" and instead restricting it to the use of only the term "Clinically Tested," without the supplemental support of "clinically shown." Reckitt submitted expert testimony from Dr. Punam Keller, a Ph.D. in Marketing and chaired professor at Dartmouth's Tuck School of Business, who opined that Neuriva customers would recognize and understand the difference between the term "tested" (which refers to a process) and the term "proven" (which refers to an outcome). Reckitt App., Tab No. 98-4 at ¶¶ 26–29. Dr. Keller further opined that Neuriva consumers—which includes class members—would recognize the distinction between a label bearing the term "Clinically Proven," and a revised one using the term "Clinically Tested," particularly because these consumers tend to be older, wealthier, more educated, and focused on performance promotion (as opposed to disease prevention) messaging. *Id.* at ¶¶ 30–40, 45.

Reckitt likewise offered declarations from company executives explaining that Reckitt would not have agreed to the injunction but for the settlement, in part because it had evidence to show that "Clinically Proven" was a more effective marketing claim than "Clinically Tested." *Id.*, Tab No. 116-2. Throughout, Reckitt maintained (and maintains) that the "Clinically Proven" claim *was* fully substantiated by its scientific evidence. *Id.*, Tab Nos. 62, 86, 98, 116. Thus, Reckitt agreed to forego a

more impactful "Clinically Proven" claim that evidence shows is true. *Id.*, Tab No. 98 at 8–10 (noting that Reckitt's market research confirmed consumers prefer "clinically proven" over "clinically tested").

## B. The Magistrate Judge Issued a Thorough R&R Recommending Final Approval, Adopted in Full by the District Court.

At the conclusion of these proceedings, after having received *seventeen* supplemental briefs in total from Reckitt, Plaintiffs, and Frank consisting of 1,091 pages of material, the Magistrate Judge issued an R&R on December 15, 2021, recommending final approval of the parties' settlement.

In a lengthy 108-page order, the Magistrate Judge's R&R relied extensively on Eleventh Circuit law pertaining to class settlement approval, meticulously analyzing the agreement under the standards established by this Court. Frank App., Tab No. 133 at 35–36 (citing *Leverso v. SouthTrust Bank of Ala., N.A.*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994) and *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). The district court likewise incorporated into its analysis consideration of the factors set forth in Rule 23(e)(2). *Id.*, Tab No. 133 at 35 n.7.

The Magistrate Judge conducted an analysis under Rule 23(e)(2)(C)(ii), which considers "the effectiveness of any proposed method of distributing relief to the class, including the method of professing class member claims," by evaluating the $8 million in monetary relief obtained by the class and balancing that against the risks the class would have faced had the litigation proceeded. *Id.* at 40–42, 48–49, 51, 86. The Magistrate Judge also evaluated the effectiveness of the notice program and resulting oversight of the claims process, including how funds would be distributed to class members. *Id.* at 11, 13 n.3, 27–28, 103.

Similarly, the Court evaluated the attorneys' fees award as provided for under Rule 23(e)(2)(C)(iii), which looks to "the terms of any proposed award of attorney's fees, including timing of payment." *Id.* at 86–98. Here, the Magistrate Judge evaluated the amount of fees awarded and its relation to the overall class recovery. *Id.* at 86, 89–98.

The Magistrate Judge also considered that Reckitt agreed not to object to fees above $2.9 million and that any unawarded fees would revert to Reckitt (characterized by Frank as "clear sailing" and "kicker" provisions) and concluded that the settlement and its fees provisions were negotiated at arms' length and that they did not indicate collusion by the parties. *Id.* at 36–40, 86–88. Likewise, the Magistrate Judge found

that the proportionality of the fees award had to be judged by the $8 million in relief "made available" to the class not the amounts ultimately claimed. *Id.* at 90.

The R&R also evaluated the value of the settlement's injunctive relief provision, rejecting Frank's argument that the injunction was "worthless." *Id.* at 55, 71–81. The Magistrate Judge relied on the extensive evidence the parties, including Reckitt, submitted to prove up the injunction's value to the class. *Id.* at 61–71, 74, 79. The Magistrate Judge did not assign a specific dollar amount to the value of the injunction, instead accounting for it when considering the "range of possible relief" that Plaintiffs and the putative class might have otherwise obtained. *Id.* at 80, 94, 97.

Frank objected to the R&R complaining that the Magistrate Judge did not conduct an analysis under Rule 23(e)(2)(C), notwithstanding the express language of the R&R stating that he had done just that. *Id.*, Tab No. 135. Frank's objection also challenged the Magistrate Judge's evaluation of the settlement's injunctive relief. *Id.* On March 16, 2022, after reviewing the R&R *de novo*, the district court overruled Frank's objections and adopted the R&R in full as the district court's final approval order. *Id.*, Tab No. 140.

14

Frank timely appealed from the district court's final approval order. *Id.*, Tab No. 141.

## STANDARD OF REVIEW

This Court reviews a district court's approval of class settlement for abuse of discretion. *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011). This is a deferential form of review and unless the district court's decision "amount[s] to a clear error of judgment we will not reverse even if we would have gone the other way had the choice been ours to make." *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1288 (11th Cir. 2009); *accord In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir.), *cert. denied sub nom. Huang v.* Spector, 142 S.Ct. 431 (2021) ("*Equifax*")) ("Because determining the fairness of the settlement is left to the sound discretion of the trial court, we will not overturn its decision absent a *clear* showing of abuse of that discretion.") (cleaned up) (emphasis in original). The abuse of discretion standard applies to review of settlement approval, in part, because of the judicial policy favoring such settlements. *Id.* ("This degree of deference to a decision approving a class settlement makes sense. Settlements resolve differences and bring parties together for a

common resolution. . . . Settlements also save the bench and bar time, money and headaches.").

Whether the district court applied the correct legal standard in reaching its decision on class certification is reviewed *de novo*. *See London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1251 (11th Cir. 2003).

## SUMMARY OF ARGUMENT

The district court conducted a thorough and searching review of the parties' class settlement. It framed that analysis according to the factors the Eleventh Circuit directs district courts to consider under *Bennett*, along with the accompanying criteria established by Rule 23(e)(2)(C). That analysis was correct, and nothing in the district court's extensive review qualifies as the sort of "clear error" that would mandate reversal and invalidation of the parties' settlement under the deferential abuse of discretion standard.

Frank's principal complaint is that the district court purportedly did not apply Rule 23(e)(2)(C)(ii), which looks to "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-members claims." *Id*. This assertion is baseless. The district court *did* consider this aspect of Rule 23, both independently and as part of its *Bennett* analysis. It concluded, correctly, that the $8 million

in relief made available was a "valuable and timely result for the class." Frank App., Tab No. 133 at 51. This was buttressed by an analysis of the notice provided to class members and the claims submission and payment process. *Id.* at 11, 13 n.3, 27–28, 103. That assessment fully satisfied Rule 23(e)(2)(C)(ii).

The district court likewise considered the criteria embodied in Rule 23(e)(2)(C)(iii) requiring an assessment of the "terms of any proposed award of attorneys' fees, including timing of payment." Here, the district court compared the fees award to the monetary benefit made available to the class—as Eleventh Circuit law dictates. *Id.* at 90–98. Under that (correct) analysis, it concluded that the ratio between the fees' award ($2.9M) and the total amount available for recovery ($8M) was within the range of fees awards courts routinely approve. *Id.* at 90, 94, 96–97. The district court also thoroughly reviewed the history of the parties' dealings and concluded that the so-called "clear sailing" and "kicker" terms of the settlement agreement did not evidence any collusion between the parties and was not unfair to the class. *Id.* at 36–40, 86–88.

Frank's insistence that the district court ignored these Rule 23(e)(2)(C) criteria is based largely on his subjective views of how class settlements ought to be structured, reflected in his Opening Brief's

17

frequent reliance on hypotheticals or academic commentary. Op. Br. at 19, 34–35, 42–43. These views are not supported by the text of the Rules, Eleventh Circuit law, or even the out-of-circuit precedent Frank incorrectly claims stand as contrary interpretations of Rule 23(e)(2)(C)(ii) or (iii). Regardless, it is not an abuse of discretion for the district court to have favored established Eleventh Circuit law over Frank's policy-driven beliefs.

The district court also did not abuse its discretion when it found that the settlement's injunctive relief had value to the class, as part of its holistic assessment of the settlement's overall fairness. Frank App., Tab No. 133 at 94, 97. Here again, the district court relied on well-established law from within this Circuit that injunctive relief in the form of settlement-mandated labeling changes provide such value. *Id.* at 80–81, 85–86.

## ARGUMENT

## I. The District Court's Approval of the Class Settlement Was Not an Abuse of Discretion.

This Court's review of whether a district court conducted a proper assessment of a proposed class settlement is highly deferential. *Dikeman v. Progressive Exp. Ins. Co.*, 312 F. App'x 168, 171 (11th Cir. 2008) ("The

district court's conclusion that a class settlement is fair will not be disturbed absent a clear showing of abuse of discretion."). Here, that assessment was conducted using a thorough *Bennett* analysis, which incorporated in substance (and expressly) the factors set forth in Rule 23(e)(2)(C) relating to settlement approval. Frank App., Tab No. 133 at 35–55, n.7.

## A. The District Court Applied the Correct Legal Standard to Its Review of the Settlement.

Frank correctly concedes that Eleventh Circuit law dictates the application of a series of six factors when evaluating class settlements, often referred to as the *Bennett* factors. Op. Br. at 14 ("The Eleventh Circuit has long had a six-factor rest for evaluating settlement fairness.") (citing *Bennett*, 737 F.2d at 986). The *Bennett* factors are: "(1) the existence of fraud or collusion among the parties in reaching the settlement; (2) the complexity, expense, and duration of the litigation; (3) the stage of proceedings at which the settlement was achieved and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, the class representatives, and the substance and amount of opposition to the settlement." Frank App., Tab No. 133 at

36 (citing *Bennett*, 737 F.2d at 986). There is no dispute that the district court applied these factors when it approved the parties' settlement. *Id.* at 35–55.

Yet, Frank maintains that because the district court's analysis was framed by the *Bennett* factors it necessarily failed to conduct an analysis under the criteria in Rule 23(e)(2)(C). Op. Br. at 15. This argument is erroneous. It misapprehends the scope of the *Bennett* inquiry and mischaracterizes what the district court did.

As the Eleventh Circuit and courts within it hold, a court may find a settlement "fair, reasonable, and adequate upon analyzing the Rule 23(e)(2) factors, *the analysis of which are subsumed within a review* of the *Bennett* factors." *Ferron v. Kraft Heinz Foods Co.*, 2021 WL 2940240, at *8 (S.D. Fla. July 13, 2021) (relying on *Equifax*, 999 F.3d at 1273) (emphasis added). This Court's *Equifax* decision likewise notes the overlap between the Rule 23(e)(2) factors and the *Bennett* analysis. *Equifax*, 999 F.3d at 1273 ("A class action may be settled only with court approval, which requires the court to find the settlement 'fair, reasonable, and adequate' based on a number of factors. Fed. R. Civ. P. 23(e)(2). This Court has also instructed district courts to consider several additional factors called the *Bennett* factors.").

20

Consistent with that description in *Equifax*, district courts within the Eleventh Circuit have repeatedly held that a court conducting a proper *Bennett* factor approval analysis necessarily incorporates into that analysis consideration of Rule 23(e)(2). *See Ferron*, 2021 WL 2940240, at *7–13; *Smith v. Costa Del Mar, Inc.*, 2021 WL 4295282 (M.D. Fla. Sept. 21, 2021), *appeal filed* (No. 22-10666). ("In sum, close analysis of each of the *Bennett* factors supports approval of the settlement under Rule 23 [including (e)(2)]."); *Morris v. US Foods, Inc.*, 2021 WL 2954741, at *8–9 (M.D. Fla. May 17, 2021) (stating that the "the first two Rule 23(e)(2) factors" [subsections (A) and (B)] were "related" to the "first *Bennett* consideration," and "the third Rule 23(e)(2) factor" [subsection (C)] had "correlative *Bennett* criteria."); *In re Checking Acct. Overdraft Litig.*, 2020 WL 4586398, at *9–13 (S.D. Fla. Aug. 10, 2020) (conducting Rule 23(e)(2) and *Bennett* analysis simultaneously); *Hanley v. Tampa Bay Sports & Ent. LLC*, 2020 WL 2517766, at *3–5 (M.D. Fla. Apr. 23, 2020) (same); *see also In re Blue Cross Blue Shield Antitrust Litig.*, 2020 WL 8256366, at *15 (N.D. Ala. Nov. 30, 2020) (noting Rule 23(e) has "similar approval factors" to the *Bennett* factors and "[b]ecause these factors overlap, it is appropriate to address them together"). Frank is therefore incorrect to argue that because the district court's analysis was conducted under

21

*Bennett* that it failed to consider Rule 23(e)(2)(C). Op. Br. 15. The error of Frank's argument on this point is confirmed by the fact that his brief does not offer a single case to support it. *Id.*

Regardless, the district court *did* specifically cite Rule 23(e)(2)(C), and its subfactors, as part of its analysis of the settlement's overall fairness. Frank App., Tab No. 133 at 35 and n.7 (recognizing that Rule 23(e)(2) factors and *Bennett* factors are to be considered for settlement approval). Frank insists that the district court nonetheless "did not assess" these Rule 23 factors but that is incorrect as well.

### 1. The District Court conducted a proper Rule 23(e)(2)(C)(ii) analysis.

As to Rule 23(e)(2)(C)(ii), "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," the district court first found that the parties negotiated $8 million in monetary relief for the class—given the complexity of claims at issue, it found "this Settlement offers the Settlement class significant relief 'that could very well exceed [their] likely recovery at trial.'" *Id.* at 40–42, 48–49, 51 ("Thus, by way of summary, this monetary recovery and injunctive relief—assured without the expense, uncertainty, and delay of litigation—is a valuable and

timely result for the Class."). This analysis was consistent with that undertaken by courts holding that a "fair and reasonable recovery" for the class in light of the defendant's defenses and "the challenging, unpredictable path of litigation" ultimately "satisfies Rule 23(e)(2)(C)(ii)." *In re Checking Acct. Overdraft Litig.*, 2020 WL 4586398, at \*12 (finding that $7.5 million cash recovery for class was "extremely fair and reasonable recovery" and "satisfies Rule 23(e)(2)(C)(ii)").

The district court also considered the "method of processing class-member claims" by evaluating both the notice and the method of distributing payments to class members through a qualified class action administrator. Frank App., Tab No. 133 at 11, 13 n.3, 27–28, 103. Courts similarly find that such retention of a third-party class action administrator "to facilitate an orderly notification and settlement distribution method for the class members" supports a finding that the settlement complies with Rule 23(e)(2)(C). *Morris*, 2021 WL 2954741, at \*9.

Consistent with the plain language of the rule, other courts conduct similar analyses under Rule 23(e)(2)(C)(ii) by focusing on the notice class members receive and the process through which claims are submitted. *See Moreno v. Capital Bldg. Maintenance & Cleaning Servs., Inc.*, 2021

WL 4133860, at *3 (N.D. Cal. Sept. 10, 2021) (evaluating Rule 23(e)(2)(C)(ii) by considering the notice received by the class); *Jackson v. Fastenal Co.*, 2021 WL 5755583, at *11 (E.D. Cal. Dec. 3, 2021) ("The Court has also reviewed the claim form that class members must submit and finds it to be equally clear, concise, and easy to understand.") (Rule 23(e)(2)(C)(ii) analysis); *SEB Inv't Mgmt. AB v. Symantec Corp.*, 2022 WL 409702, at *4 (N.D. Cal. Feb. 10, 2022) ("The settlement notice informed class members that they had to submit a claim form and informed them how to do so."). Indeed, one of Frank's principal authorities, in *dicta*, interprets Rule 23(e)(2)(C)(ii) as directed principally to the notice process. *Briseño v. Henderson*, 998 F.3d 1014, 1026 n.3 (9th Cir. 2021) (explaining that objector did not object to lack of direct notice to class but noting in *dicta* that 23(e)(2)(C)(ii) is directed towards effectiveness of notice).

Frank does not—nor did he below—point to any inadequacy in the notice itself, how that notice was distributed, or the process for submitting claims. On that point, the district court unmistakably approved the notice as effective. Frank App., Tab No. 133 at n.3 ("The Undersigned finds that the Class Notice substantially in the form approved by the Court in its preliminary approval order was given in the manner ordered by the Court, constitutes the best practicable notice, and

24

was fair, reasonable, and adequate."); *Moreno*, 2021 WL 4133860, at *3. And it likewise approved of the parties' use of a claim form and drew a contrast between this settlement and unacceptable ones where claims forms were deemed inordinately complicated. Frank App., Tab No. 133 at 50, 105. So, the substance of what the district court considered—the notice, its effectiveness, and the use of a claim form—aligns directly with what Rule 23(e)(2)(C)(ii) requires.

Frank nonetheless insists that even though the language of Rule 23(e)(2)(C)(ii) refers to "proposed method[s] of distributing relief" and "processing class members claims," what the Rule (counter-textually) means is that the inquiry should be on the amount of fees plaintiffs' counsel receive in comparison to the amount of money the class ultimately claims. Op. Br. at 31, 36. Frank thus argues it was reversible error for the district court to have considered the $8 million "made available" to the class and instead should have only considered the approximate $1 million in claims submitted at the time of approval. *Id.* at 31. The problem with this argument is that—in addition to being completely unmoored from the language of the Rule—it is contrary to Eleventh Circuit law.

The Eleventh Circuit, as the district court correctly observed, allows a fee award to be evaluated based on the funds made *available* to the class. Frank App., Tab No. 133 at 90 (*citing Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir. 1999) and *Poertner v. Gilette Co.*, 618 F. App'x 624, 628 (11th Cir. 2015)). Indeed, Frank's insistence on evaluating only what class members "*actually* receive" when assessing fairness, Op. Br. at 31 (emphasis in original), is an assertion that has been repudiated. *See Carter v. Forjas Taurus, S.A.*, 701 F. App'x. 759, 767 (11th Cir. 2017) ("[The objectors] argue the attorney's fee should have been calculated based on the amount actually paid to the class. But this is not required by our precedent. No case has held that a district court must consider only the actual payout in determining attorneys' fees.") (cleaned up) (quoting *Waters*, 190 F.3d at 1295).

Frank attempts to discredit this body of law with the assertion that these cases pre-date 2018 amendments to Rule 23(e)(2) and so should be ignored or heavily discounted. Op. Br. at 32. But even after 2018, courts have continued to apply the rule that it is the fund made available to the class that controls, not the amount of the fund claimed. *See Paulus v. Real Green Sys., LLC*, 2021 WL 8946174, at *3 (S.D. Fla. Jul. 28, 2021)

(applying *Poertner* for rule that evaluation of fee award is based on "the total fund created, even where the actual payout following the claims process is lower").

Finally, the notion that the district court's application of Rule 23(e)(2)(C)(ii) would give rise to a "circuit split," Op. Br. at 32, is baseless. The decision Frank principally relies on for this argument is *Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021). *Briseño* does not interpret Rule 23(e)(2)(C)(ii) to suggest that courts ought to ignore the funds made available to the putative class.

In *Briseño*, the Ninth Circuit reversed approval of a putative class action settlement. Its principal holding was that Rule 23(e)(2) applies to class settlements regardless of whether those settlements are pre- or post-certification. 998 F.3d at 1024 ("Nothing in the Rule's text suggests that this requirement applies only to pre-certification settlements."). In so doing, it noted that the district court failed to conduct an analysis under Rule 23(e)(2)(C)(**iii**), which requires an assessment of "any proposed award of attorneys' fees." *Id.* This discussion did not include an analysis of Rule 23(e)(2)(C)(**ii**) at all. *Id.*

But even as to subsection (iii), the panel did not create some sort of *per se* rule that the funds made available to a class may never be

27

considered when evaluating a settlement's overall fairness. To the contrary, it took pains to explain that its opinion should not be read to suggest that courts should "unnecessarily meddle in class settlements negotiated by the parties or that courts have a duty to maximize the settlement fund for class members." *Id.* at 1027. And it likewise repudiated the notion that alleged disproportionality between the fees awarded and what the class receives should automatically invalidate an otherwise fair settlement. *Id.* ("Disproportionate fee awards, clear sailing agreements, and kicker clauses all may be elements of a good deal."). Thus, it is the sound of a false alarm being rung when Frank suggests that affirming the approval of this settlement would engender a circuit split.

### 2. The District Court conducted a proper Rule 23(e)(2)(C)(iii) analysis.

Rule 23(e)(2)(C)(iii) directs district courts to consider "the terms of any proposed award of attorneys' fees." Frank maintains that the district court did not "consider" this provision. That ignores that the district court considered, extensively and in substance, the fee award and Frank's objection that it was disproportionately high and structured incorrectly.

The district court addressed the proposed attorney fee at length. Frank App., Tab. No. 133 at 86–98 (applying the "percentage-of-recovery" method, based on "total benefits made available" and granting request of $2.9 million in fees); *accord Smith*, 2021 WL 4295282, at *12 (utilizing the percentage-of-the-fund method to grant reduced fee award under Rule 23(e)(2)(C)(iii) and 23(h)). There and elsewhere, the district court considered Frank's objection to the proposed fee award, specifically, that it is "unreasonably preferential" to plaintiffs' counsel and "out of proportion with the class recovery" particularly in light of "clear sailing" and "kicker" provisions—the precise points Frank complained about in his objection to the R&R, and that he re-asserts on appeal. Frank App., Tab No. 135 at 11–13, 15–17; Op. Br. at 8, 22. After thorough analysis, the district court determined that these provisions were "immaterial" because the settlement was "negotiated at arm's length" and "there was no collusion," referring to his previous finding under the first Bennett factor. *See* Frank App., Tab. No. 133 at 86–88; *see also id.* at 36–40. This analysis satisfied Rule 23(e)(2)(C)(iii). *See Smith*, 2021 WL 4295282, at *12; *Ferron*, 2021 WL 2940240, at *18.

Frank maintains that the district court's assessment of the record and its accompanying finding that there was no collusion between the

parties was insufficient to approve the fee award. Op. Br. at 24. But this is an argument Frank himself previously has presented to the Eleventh Circuit, which this Court summarily rejected. *Poertner*, 618 F. App'x at 630 ("But we conclude that Frank's self-dealing contention is belied by the record: the parties settled only after engaging in extensive arms-length negotiations moderated by an experienced, court-appointed mediator.") (overruling class settlement objection litigated by Frank complaining of unfairness reflected by "kicker" and "clear sailing" terms in settlement).

### B.    The District Court Properly Evaluated the Settlement's Injunctive Relief When Approving the Settlement.

A settlement's fairness should be evaluated in its entirety, including both monetary and non-monetary benefits, and weighed against the risks of proceeding. *See Wilson v. EverBank*, 2016 WL 457011, at *11 (S.D. Fla. Feb. 3, 2016) ("[C]ourts rightly consider the value of injunctive and monetary relief together in assessing whether a class action settlement provides sufficient relief to the class.") (evaluating value of injunctive relief under the "range of possible recovery" factor, one of six factors Eleventh Circuit considers in evaluating a settlement).

As the Eleventh Circuit held in *Poertner*, injunctive relief that requires a defendant to forego challenged labeling statements because of the underlying litigation provides "substantial evidence" that the relief provides benefit to the settling class. 618 F. App'x at 629 ("[W]e conclude that the district court's valuation of the nonmonetary relief was supported by the record.") (applying substantial evidence standard). *Poertner* affirmed the final approval of a class settlement likewise objected to by Frank, who had asserted that the labeling restrictions agreed to by the defendant were "illusory" because the defendant was no longer selling the underlying product at the time of the settlement. *Id.* Even in that context, the Eleventh Circuit still concluded the injunctive relief should be considered of value to the class, focusing on that the litigation prompted the defendant to make the labeling change: "The record . . . makes clear that [defendant's] decision to stop selling and marketing [the challenged product] with the challenged statements on the packaging was motivated by the present litigation. Frank did not present any contradictory evidence to the district court." *Id.*

This principle from *Poertner*, that a settlement-induced label change provides value to the class for approval purposes, has been repeatedly applied by district courts within the Eleventh Circuit. *See*

31

*Marty v. Anheuser-Busch Cos.*, LLC, 2015 WL 6391185, at *2 (S.D. Fla. Oct. 22, 2015) ("Under Eleventh Circuit law, injunctive changes such as label modifications represent a benefit to the class and should be considered when approving a class settlement.") (citing *Poertner* and overruling objection claiming injunction offered no value); *Ferron*, 2021 WL 2940240, at *15 ("Lastly, the Settlement provided a value to all Class Members in the form of the Programmatic Relief, requiring a label change that Defendant would not have agreed to absent the Agreement."); *Janicjevic v. Classica Cruise Operator, LTD.*, 2021 WL 2012366, at *1 (S.D. Fla. May 20, 2021) ("The Court finds [injunctive-relief based] policies certainly have an important value to the class that would not have been brought about by individual actions."); *id.* at *6 ("[C]ourts rightly consider the value of injunctive *and* monetary relief together in assessing whether a class action settlement provides sufficient relief to the class.") (applying *Poertner* to settlement-induced policy changes).

Reckitt submitted unrebutted testimony below that the injunctive relief it agreed to—limiting itself to the term "Clinically Tested" and foregoing "Clinically Proven" or "shown"—was the product of the underlying litigation and Plaintiffs' claims. Reckitt App., Tab No. 116 at

32

6–8. This proves the injunctive relief's value under *Poertner*. 618 F. App'x at 629; *see also Ferron*, 2021 WL 2940240, at *11 ("The Court also finds that Defendant would not have implemented the labeling changes required by the Settlement had Plaintiff not brought this lawsuit."). Moreover, the injunction was agreed to despite considerable scientific evidence and expert testimony to show that Reckitt's "Clinically Proven" claim *was* truthful and substantiated. Reckitt App., Tab No. 116 at 2–6. And, had Reckitt prevailed in the case—which might have occurred even at the Rule 12 stage—Plaintiffs would have received no relief at all, much less the specific label change sought by the class. Thus, the value of the injunctive relief here must be considered through the lens of the "range of possible relief" that Plaintiffs might have received informed by the "likelihood of success" in proceeding. *Wilson*, 2016 WL 457011, at *6 n.11 (citing *Leverso*, 18 F.3d at 1530 n.6).

Frank contends that the injunction has "no settlement value" because it purportedly is not directed towards past purchasers of Neuriva, such that it cannot be considered for purposes of overall fairness of the settlement. Op. Br. at 47. This argument is meritless and contradicted by the record below, which Frank's Brief simply ignores.

The settlement's injunctive relief *does* benefit class members, and Reckitt submitted evidence proving just that. Dr. Punam Keller submitted an unrebutted declaration attesting to the effectiveness of the injunctive relief—changing "Clinically Proven" to Clinically Tested"—by explaining that "Neuriva consumers likely would appreciate the *change* in product claims." Reckitt App., Tab No. 98-4 at ¶ 24 (emphasis added); *see also id.* ¶ 36. Dr. Keller also drew the unrebutted conclusion that the targeted nature of the class notice, along with the expected characteristics of Neuriva purchasers, would further increase the likelihood those purchasers would be attuned to the injunction-based label change. *Id.* ¶ 39 ("Given that 80% of actual Neuriva's consumers likely saw up to four communications specifically aimed at alerting these customers that the product claim had changed, such customers are particularly likely to appreciate and attend to such changes."). A change to the product's label will allow these past purchasers of Neuriva to make fully-informed future purchases, because the labeling is now undisputedly truthful and accurate by representing that Neuriva's active ingredients have been "Clinically Tested."

Injunctive relief in the form of label changes that allow past purchasers to make more informed purchases in the future has been

expressly deemed a form of injunction class members may seek. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018) (holding that past purchasers of product have standing to seek an injunction in class actions because absent such an injunction that consumer "will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to"). Thus, Frank is wrong to contend that class members obtain no value from the injunction.

And once again, he points to no evidence supporting his conclusion that all past Neuriva purchasers will be blind to or fail to take account of the revised label for future purchases. Op. Br. at 39–40. Frank's argument on this point is instead principally rhetoric. Whereas in support of the injunction's value, Reckitt can point to unrebutted expert testimony evidencing the injunction's value. *See* Frank App., Tab No. 133 at 67–71, 74 (R&R relying on declarations that consumers appreciate the difference between "clinically proven" and "clinically tested," especially without the supplemental use of "shown," and that Reckitt would not have changed its label but for this litigation).

Frank, meanwhile, argues about the injunction's purported ineffectiveness with hypotheticals drawn from television sitcoms and

popular fiction. *See* Op. Br. at 43 (arguing the injunction is ineffective based on hypothetical scenarios taken from *Seinfeld* and *The Great Gatsby*).[2]

Frank's legal arguments regarding the district court's treatment of the injunction are equally meritless. Frank argues that the Court should not have relied on the Eleventh Circuit's decision in *Poertner* to support its conclusion that the injunction, which was undisputedly the product of the litigation, has value. Op. Br. at 50–51. But *Poertner* holds exactly that: "The record . . . makes clear that [defendant's] decision to stop selling and marketing [the challenged product] with the challenged statements on the packaging was motivated by the present litigation."

---

[2] The evidence below as to the injunction's value reached far beyond the Keller Declaration, as the district court's analysis of the evidence submitted by the parties reflects. The R&R adopted by the district court pointed to, among other sources of proof: (1) differences in the plain meaning of the terms "proven," "shown," and "tested," which has an accompanying related effect on how "reasonable consumers" can be expected to interpret Neuriva's labels (Frank App., Tab No. 133 at 20, 56, 69); (2) two expert declarations two from UCLA medical expert Dr. Gary W. Small establishing that Neuriva's pre-settlement labeling was fully substantiated as a matter of medical science (*id.* at 9, 67–71); (3) two declarations from Rachel Sexton, Reckitt's Innovation and Strategy Director for the division that oversees Reckitt's marketing, showing Reckitt was giving up a claim it concluded had value for sales (*id.* at 74); (4) and information submitted by Plaintiffs' counsel showing that the Settlement imposes greater labeling restrictions that those permitted by Reckitt's competitors in the brain health supplement space (i*d.* at 66, 79).

618 F. App'x 624, 629 (deeming injunction to be of value based on causal link between the litigation and resulting injunction).

Moreover, there can be no possible argument that the district court overweighed the injunction's value when issuing final approval. The district court expressly declined to ascribe a particular dollar value to the injunctive relief, but nonetheless concluded that the settlement was fair since the requested fee award was only 36% of the settlement fund. Frank App., Tab No. 133 at 97 (concluding that injunction had "some value" in overall settlement valuation but not altering the percentage ratio between fees and relief available to class in making approval determination). Thus, the district court correctly considered the substantial evidence going to the injunction's value and weighed that evidence using the relevant law. This was not an abuse of discretion.

## CONCLUSION

For all the foregoing reasons, the judgment of the district court should be affirmed.

37

Dated:  August 15, 2022                    Respectfully submitted,

                                           /s/ *Charles C. Sipos*
                                           Charles C. Sipos
                                           PERKINS COIE LLP
                                           1201 Third Ave.
                                           Suite 4900
                                           Seattle, WA 98101
                                           Telephone: (206) 359-8000
                                           CSipos@perkinscoie.com

                                           David T. Biderman
                                           PERKINS COIE LLP
                                           1888 Century Park East
                                           Suite 1700
                                           Los Angeles, CA 90067
                                           Telephone: (310) 788-9900
                                           DBiderman@perkinscoie.com

                                           Melissa Pallett-Vasquez
                                           Lori P. Lustrin
                                           BILZIN SUMBERG BAENA PRICE &
                                           AXELROD, LLP
                                           1450 Brickell Ave.
                                           Floor 23
                                           Miami, FL 33131
                                           Telephone: (305) 374-7580
                                           LLustrin@bilzin.com
                                           MPallett@bilzin.com

                                           *Counsel for Defendants-Appellees*
                                           *Reckitt Benckiser LLC and RB*
                                           *Health (US) LLC*

## CERTIFICATE OF COMPLIANCE

The undersigned attorney hereby certifies that this Response Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because this brief contains 7,678 words, excluding the parts exempted by Fed. R. App. P. 32(f) and Eleventh Circuit Rule 32-4. The undersigned attorney also certifies that this Response Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this Response Brief has been prepared in a proportionally spaced typeface using Microsoft Word with Century Schoolbook 14-point font.

/s/ *Charles C. Sipos*
Charles C. Sipos

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on the 15th day of August, 2022, I caused the foregoing to be electronically filed using the Court's CM/ECF System, thereby serving all registered users in this case by operation of that electronic filing system, including the following individuals:

Martha Geer
Mark R. Sigmon
Patrick M. Wallace
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
900 W. Morgan St.
Raleigh, NC 27603
Telephone: (919) 600-5000
MGeer@milberg.com
MSigmon@milberg.com
PWallace@milberg.com

John Michael Andren
Theodore H. Frank
M. Frank Bednarz
HAMILTON LINCOLN LAW
INSTITUTE
1629 K St. NW
Suite 300
Washington, D.C. 20006
Telephone: (703) 203-3848
Ted.Frank@hlli.org

Jonathan Betten Cohen
Rachel Soffin
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
800 S. Gay St.
Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
JCohen@milberg.com
RSoffin@milberg.com

Matthew Seth Sarelson
DHILLON LAW GROUP, INC.
2100 Ponce De Leon Blvd.
Suite 1290
Coral Gables, FL 33134
Telephone: (305) 773-1952
MSarelson@dhillonlaw.com

*Counsel for Objector-Appellant*
*Theodore H. Frank*

*Counsel for Plaintiffs-Appellees*

Daniel K. Bryson
WHITFIELD BRYSON LLP
900 W. Morgan St.
Raleigh, NC 27603
Telephone: (919) 600-5000
Dan@whitfieldbryson.com

Matthew D. Schultz
LEVIN PAPANTONIO RAFFERTY
316 S. Baylen St.
Suite 600
Pensacola, FL 32502
Telephone: (850) 435-7000
MSchultz@levinlaw.com

Jonathan Shub
SHUB LAW FIRM LLC
134 Kings Hwy E.
Floor 2
Haddonfield, NJ 08033
Telephone: (856)772-7200
JShub@shublawyers.com

Nick Suciu, III
BARBAT MANSOUR & SUCIU, PLLC
1644 Bracken Rd.
Bloomfield Hills, MI 48302
Telephone: (313) 303-3472
NickSuciu@bmslawyers.com

*Additional Counsel for Plaintiffs-Appellees*

/s/ *Charles C. Sipos*
Charles C. Sipos