**Case No. 22-11232-AA**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

DAVID WILLIAMS, individually and on behalf of all others similarly situated, CAROLL ANGLADE, individually and on behalf of all others similarly situated, HOWARD CLARK, THOMAS MATTHEWS, and MARTIZA ANGELES,

Plaintiffs-Appellees,

v.

RECKITT BENCKISER LLC and RB HEALTH (US) LLC,

Defendants-Appellees,

THEODORE H. FRANK,

Objector-Appellant.

Appeal from the United States District Court
for the Southern District of Florida

No. 1:20-cv-23564-MGC

## Appellant Theodore H. Frank's Reply Brief

Theodore H. Frank
John M. Andren
HAMILTON LINCOLN LAW CENTER
CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC 20006
(703) 203-3848
ted.frank@hlli.org
*Attorneys for Objector-Appellant*
*Theodore H. Frank*

## Certificate of Interested Persons

Under Pursuant to Cir. R. 28-1(b) and Cir. R. 26.1-2, Theodore H. Frank declares that the Certificate of Interested Persons in his opening brief is correct.

Dated: October 17, 2022            */s/ Theodore H. Frank*
                                   Theodore H. Frank
                                   John M. Andren
                                   HAMILTON LINCOLN LAW INSTITUTE
                                   CENTER FOR CLASS ACTION FAIRNESS
                                   1629 K Street NW, Suite 300
                                   Washington, DC 20006
                                   Telephone: (703) 203-3848
                                   Email: ted.frank@hlli.org

                                   *Attorneys for Objector-Appellant*
                                   *Theodore H. Frank*

# Table of Contents

Certificate of Interested Persons ............................................. C-1

Table of Contents.................................................................. i

Table of Citations ............................................................... iii

Introduction ...................................................................... 1

Argument .......................................................................... 4

I.    The district court erred as a matter of law when it failed to
      correctly address Rule 23(e)(2)(C) factors not listed in
      *Bennett*. But intervening precedent and appellees' forfeitures
      show that this Court can go farther and not just vacate and
      remand but reverse entirely with instructions to reject the
      settlement. ................................................................. 4

      A.    *Arkin* is dispositive here. ...................................... 4

      B.    The *Bennett* factors do not subsume Rule 23(e)(2)(C). .......... 7

      C.    "Effectiveness" must mean "effectiveness." The text of
            Rule 23(e)(2)(C)(ii) makes no sense without looking at
            actual recovery, and the district committed reversible
            error in refusing to do so. ...................................... 8

      D.    The district court failed to correctly evaluate the
            Rule 23(e)(2)(C)(iii) red flags of disproportionate
            recovery, clear sailing, and a kicker. Appellees rest
            entirely on the "made available" fiction and identify no
            exceptions that could save this settlement. ..................... 14

      E.    Remand is independently required because neither the
            R&R nor the district court gave a reasoned response to
            several substantive Frank objections................................ 19

II.   The injunction to replace a few words in Neuriva's future
      marketing does not direct relief to the class, so cannot
      support final approval of a settlement waiving the class's
      retrospective damages claims. ......................................... 19

III.   Frank is a class member whose claims are compromised by the settlement and has standing to appeal settlement approval. ....................................................................................... 22

Conclusion .................................................................................. 28

Certificate of Compliance ........................................................ 29

# Table of Citations

## Cases

*Arkin v. Pressman,*
    38 F.4th 1001 (11th Cir. 2022)............................3, 4-6, 13, 15, 18, 28

*In re Baby Prods. Antitrust Litig.,*
    708 F.3d 163 (3d Cir. 2013).................................................12-13, 23

*Bennett v. Behring Corp.,*
    737 F.2d 982 (11th Cir. 1984) ............................................................7

*Berni v. Barilla S.P.A.,*
    964 F.3d 141 (2d Cir. 2020) ............................................................24

*Bosse v. Oklahoma,*
    137 S. Ct. 1 (2016) ...........................................................................25

*Briseño v. Henderson,*
    998 F.3d 1014 (9th Cir. 2021) ......................1, 2, 8, 11, 12, 14-17, 23

*Campbell v. Facebook, Inc.,*
    951 F.3d 1106 (9th Cir. 2020) ....................................................15-16

*Campbell-Ewald Co. v. Gomez,*
    577 U.S. 153 (2016) .........................................................................27

*Carter v. Forjas Taurus, S.A.,*
    701 Fed. App'x 759 (11th Cir. June 29, 2017) ..................................9

*Churchill Village, L.L.C. v. Gen. Electric,*
    361 F.3d 566 (9th Cir. 2004) ...........................................................25

*Davidson v. Kimberly-Clark Corp.,*
    889 F.3d 956 (9th Cir. 2018) .....................................................20, 26

*Devlin v. Scardelletti,*
    536 U.S. 1 (2002) ........................................................................24-26

*In re Dry Max Pampers Litig.,*
    724 F.3d 713 (6th Cir. 2013) .................................3, 17, 18-19, 20-21

*In re Equifax Data Breach Litig.*,
    999 F.3d 1247 (11th Cir. 2021) ....................................................... 7

*Feder v. Elec. Data Sys. Corp.*,
    248 F. App'x 579 (5th Cir. 2007) ............................................... 26-27

*In re First Cap. Holdings Corp. Fin. Prod. Sec. Litig.*,
    33 F.3d 29 (9th Cir. 1994) ......................................................... 24-25

*Int'l Precious Metals Corp. v. Waters*,
    530 U.S. 1223, 1224, 120 S. Ct. 2237, 147 L. Ed. 2d 265
    (2000)............................................................................................. 12

*\*Johnson v. NPAS Sols, LLC*,
    975 F.3d 1244 (11th Cir. 2020) ........................................... 2, 19, 25

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................ 24

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) ....................................................... 23

*In re Navigant Consulting, Inc. Sec. Litig.*,
    275 F.3d 616 (7th Cir. 2001) ......................................................... 26

*Northeastern Eng'rs Fed. Credit Union v. Home Depot, Inc.*,
    931 F.3d 1065 (11th Cir. 2019) ..................................................... 13

*\*Pearson v. NBTY, Inc. ("Pearson")*,
    772 F.3d 778 (7th Cir. 2014) ...................................... 1, 2, 9, 19, 23

*Pearson v. Target Corp. ("Pearson III")*,
    968 F.3d 827 (7th Cir. 2020) ..................................................... 27-28

*Poertner v. Gillette Co.*,
    618 F. App'x 624 (11th Cir. 2015) ............................................. 2-3, 9

*Rawa v. Monsanto Co.*,
    934 F.3d 862 (8th Cir. 2019) ..................................................... 25-26

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ...................................................... 1, 23

*Roes v. SFBSC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019) ................................................. 2, 17-18

*In re Samsung Top-Load Washing Machine Mktg., Sales Practices*
    *& Prods. Liab. Litig.*,
    997 F.3d 1077 (10th Cir. 2021) ....................................................... 17

*In re Southwest Air. Voucher Litig.*,
    898 F.3d 740 (7th Cir. 2018) .......................................................... 17

*In re Southwest Air. Voucher Litig.*,
    799 F.3d 701 (7th Cir. 2015) ..................................................... 16-17

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) ................................................................... 23, 24

*In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*,
    869 F.3d 551 (7th Cir. 2017) ..................................................... 25-26

*\*Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ................................................. 3, 19-22

*In re Target Corp. Customer Data Breach Litig.*,
    847 F.3d 608 (8th Cir. 2017) .......................................................... 23

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ....................................................................... 20

*Waters v. Int'l Precious Metals Corp.*,
    190 F.3d 1291 (11th Cir. 1999) ...................................................... 13

*Workman v. United Parcel Serv., Inc.*,
    234 F.3d 998 (7th Cir. 2000) .......................................................... 22

## Rules and Statutes and Constitutional Provisions

Fed. R. Civ. P. 12(b)(1) ....................................................................... 20

Fed. R. Civ. P. 23(a)(3) ....................................................................... 27

Fed. R. Civ. P. 23(b)(2) .................................................................. 15, 20

Fed. R. Civ. P. 23(b)(3) .................................................................. 16, 20

Fed. R. Civ. P. 23(c)(2) ................................................................... 10-11

Fed. R. Civ. P. 23(e) ........................................................... 3, 4, 9, 20, 28

Fed. R. Civ. P. 23(e)(1)(B) .................................................................. 23

Fed. R. Civ. P. 23(e)(2) .................................................................. 10, 18

Fed. R. Civ. P. 23(e)(2)(B) ............................................................ 2, 17, 18

Fed. R. Civ. P. 23(e)(2)(C) ................................................. 1, 2, 4, 7, 8, 17

Fed. R. Civ. P. 23(e)(2)(C)(i) ............................................................... 10

*Fed. R. Civ. P. 23(e)(2)(C)(ii) ......................................................... 7, 8-11

*Fed. R. Civ. P. 23(e)(2)(C)(iii) ....................................................... 7, 14-18

Fed. R. Civ. P. 23(e)(5) ....................................................................... 27

Fed. R. Civ. P. 23(e)(5)(A) ................................................................... 27

Fed. R. Civ. P. 72 ............................................................................ 19

Fed. R. Civ. P. 72(b) .......................................................................... 19

Fed. R. Civ. P. 72(b)(2) ........................................................................ 8

U.S. Const., Art. III .................................................................. 3, 20, 22-27

## Other Authorities

*Effective*,
  *Merriam-Webster* (online version 2022)............................................ 9

Federal Rules Committee,
  Notes of Advisory Committee to 2018 Amendments to
  Rule 23 ............................................................................. 14

Federal Rules Committee,
  Notes of Advisory Committee to 2003 Amendments to
  Rule 23 ............................................................................. 25

## Introduction

The settling parties, using over 20,000 words, do not dispute that the settlement will pay the attorneys much more than what the class receives: $2.9 million versus $1.1 million. (Plaintiffs are embarrassed enough by the scanty $1.1 million figure that it is entirely absent from their brief.) They do not dispute that the Seventh and Ninth Circuits forbid such upside-down distributions. Defendants do not mention *Pearson*, and neither appellee mentions *Redman*.

Does Rule 23(e)(2)(C) have any substantive meaning? This Court has not yet answered that question; the parties instead rely on a non-precedential unpublished case from before the rule existed; on a fee dispute case where class counsel was not compromising anyone's claims and settlement fairness was not at issue; and on district courts that adopt the *ex parte* arguments of settling parties to rubber-stamp settlements using permissive standards. But the best answer is in the text of the rule, and the rulings of appellate courts asked to interpret it. Frank's brief also provided public-policy arguments why *Pearson* and *Briseño* announce the better rule. The settling parties pooh-pooh that academic and policy analysis, but they do not provide reasons why their preferred (though differing) interpretation is superior, much less why this Court should answer the question of first impression in this Circuit by creating a split. This is especially so given that appellees do not argue that *Briseño* is

*wrong*; they instead mischaracterize its holdings, though it is in fact directly on point.

Appellees do not dispute that the "made available" fiction encourages perverse behavior and results by class counsel. OB16-18.[1] They do not dispute that the best way of measuring the "effectiveness of the method of distribution" is to look at the *results* of the method of distribution, and that the district court did not do that. They do not dispute that attorneys appropriately incentivized by the *Pearson/Briseño* line of cases to care more about what the class actually receives rather than a fictional made-available number respond to those incentives to produce better results and ensure that class members actually receive non-fictional money proportional to the attorneys' fees. OB18-19.

Appellees do not dispute that *Roes* requires reversal because the lower court erroneously conflated the Rule 23(e)(2)(B) inquiry with the Rule 23(e)(2)(C) inquiry. OB24 (citing *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 n.12 (9th Cir. 2019)). They do not even mention *Roes*.

Appellees do not dispute that a district-court failure to address substantive objections requires reversal under *Johnson*. OB24.

All of these forfeitures and implicit concessions should by themselves resolve the appeal in Frank's favor. The unpublished *Poertner*

---

[1] OB, PB, and DB are Frank's opening brief, and the plaintiffs' and defendants' answering briefs respectively.

does not compel this Court to extend its holding to a new and bad interpretation of a rule *Poertner* never opined on.

But appropriately enough for a case over a tv-advertised product: wait, there's more! In between the opening and response briefs, this Court decided *Arkin v. Pressman*, which agrees with Frank on several of his arguments. 38 F.4th 1001 (11th Cir. 2022). It is an inappropriate "ethical violation" for class counsel to "subordinate[] the interests of the class" to its own by "a huge payout for [attorneys] with little to the class." *Id.* at 1011. The fact that the *Arkin* settlement made $21 million available was irrelevant when it is "a legal fiction created to maximize … attorneys' fees." *Id.* at 1012. *Compare* OB31-37 (making same argument). *Arkin*, which came out two months before appellees' briefs, but which neither brief addresses, should also be dispositive.

Appellees do not dispute that the Sixth and Seventh Circuits forbid counting generalized prospective injunctive relief as consideration for the release of, or other prejudice to, retrospective damages claims. Neither appellee mentions *Synfuel*, much less attempts to prove its reasoning unpersuasive; neither discusses *Pampers*'s analysis of the injunctive relief in that case. Instead, they both rely on a Ninth Circuit case that has nothing to do with Rule 23(e)—but does contradict their standing argument.

We discuss Article III in Section III. Perhaps recognizing the settlement and the district court's legal analysis of it are indefensible on

the merits, appellees throw up a red herring of jurisdiction without once mentioning the relevant appellate precedents. Courts have never required objectors to a class settlement to litigate the merits of their underlying claim before they can protest settling parties' violation of Rule 23(e). Appellees' arguments confuse the merits with standing; rely on a mistaken premise about the settlement and record; and ignore that every appellate court to address this issue has rejected their argument.

## Argument

I.  **The district court erred as a matter of law when it failed to correctly address Rule 23(e)(2)(C) factors not listed in *Bennett*. But intervening precedent and appellees' forfeitures show that this Court can go farther and not just vacate and remand but reverse entirely with instructions to reject the settlement.**

### A.  *Arkin* is dispositive here.

In *Arkin v. Pressman*, 38 F.4th 1001 (11th Cir. 2022), the Wanca firm filed a TCPA class action in the Middle District of Florida. They settled for a putative $21 million fund—but then dismissed the federal case to refile in Illinois state court because of the opportunity for one-third instead of 25% fees. *Id.* at 1005-06. Like most "made-available" funds, the amount was illusory, because, like here, the parties structured the settlement so class members would make few claims. Wanca would receive $7 million (based on the $21 million "made available") and the

4

class would receive less than $1 million. A competing plaintiffs' firm objected strenuously, and the defendant used the controversy to withdraw from the settlement. New litigation ensued back in the Middle District of Florida, the objector became lead plaintiff, and the parties reached a new settlement that created a non-reversionary $4.25 million common fund that would ultimately pay the class four times as much as the old settlement, though the attorneys much less. *Id.* at 1006-07.

Wanca demanded fees from the new settlement on equitable grounds, but the district court refused. Wanca appealed.

*Arkin* noted that Wanca did create a substantial benefit to the common fund that would ordinarily entitle it to attorneys' fees, but "this is not an ordinary case." 38 F.4th at 1011. "Wanca subordinated the interests of the class to its own interests throughout the *Arkin* litigation. There is no other rational explanation for the terms of the *Arkin* Settlement, which provided for a huge payout for Wanca with little to the class …." *Id*. This was "an ethical violation" and grounds for a rejection of fees entirely. *Id.* at 1011-12. Even though $21 million was made available to the *Arkin* class in the first settlement, that settlement was plainly inferior to the $4.25 million non-reversionary common fund negotiated later. Calling a spade a spade, this Court recognized that the $21 million was a "legal fiction." *Id.* at 1012.

This case is on all fours with the first *Arkin* settlement. *First*, there is a "huge payout for [class counsel] with little to the class," despite a

5

much larger fictional amount made available—though less made available here than in *Arkin*. *Id*. *Second*, just as the *Arkin* defendant could terminate the settlement if there were too many claims, *id*.; a functionally identical provision exists in this case, Dkt.116-1 at 12 ¶4. And, *lastly*, there is even a hint of *Arkin*'s forum shopping to maximize attorneys' fees: plaintiffs here filed the first suit in California (where the Ninth Circuit prohibits settlements like these), but decided to ultimately file the settlement in Florida, presumably to avoid that unfavorable precedent. (The district court ignored Frank's invitation (Dkt.108-2 at 11 n.1) to investigate whether the parties were forum-shopping.)

*Arkin* calls it "an ethical violation" to use the illusion of "nominal[]" relief made available to maximize attorneys' fees at the expense of the class—exactly what Frank challenges in his objection and appeal. *E.g.*, OB21-22 & 37-51. How can conduct considered unethical unclean hands in one case be fair, reasonable, and adequate in another? The class's interests are just as "subordinated." The district court fell for the made available "fiction" in approving the settlement, and that requires reversal. As in *Arkin*, a renegotiated proportional settlement would provide the class much more relief. The district court erred in failing to reject the settlement entirely, and *Arkin* requires reversal here with instructions to reject settlement approval.

### B.    The *Bennett* factors do not subsume Rule 23(e)(2)(C).

The district court committed reversible error when it applied the wrong legal standard to settlement approval and ignored a number of Rule 23(e)(2)(C) factors and applied only the pre-2018 amendment *Bennett* factors. OB32-34. Appellees disagree: they assert, citing other district courts that made the same error, that the *Bennett* factors encompass everything in Rule 23(e)(2)(C). DB14-16. Putting the two lists side by side should resolve the disagreement quickly. Nothing in the *Bennett* factors requires consideration of the two critical problems with this settlement addressed in Rules 23(e)(2)(C)(ii) and (C)(iii)—and, sure enough, the district court did not address those factors, or even attempt to shoehorn them into the constrained readings appellees wish. Contrary to RB's claim (DB20), *Equifax* does not disagree:

> A class action may be settled only with court approval, which requires the court to find the settlement 'fair, reasonable, and adequate' based on a number of factors. Fed. R. Civ. P. 23(e)(2). This Court has also instructed district courts to consider ***several additional factors*** called the *Bennett* factors.

*In re Equifax Data Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) (emphasis added); *accord* OB14. Nothing in *Equifax* says to ignore Rule 23(e)(2)(C)'s text; the opinion simply notes that appellants there did not raise those particular issues.

7

**C.    "Effectiveness" must mean "effectiveness." The text of Rule 23(e)(2)(C)(ii) makes no sense without looking at actual recovery, and the district committed reversible error in refusing to do so.**

Rule 23(e)(2)(C)(ii) requires analysis of the "effectiveness of the method of distribution." Plaintiffs assert (PB38) that the "Magistrate Judge's R&R did specifically address Rule 23(e)(2)(C)(ii)"—though the word "effectiveness" never shows up in that opinion's analysis of settlement fairness. More importantly, the district court expressly eschewed evaluating actual recovery to the class (Dkt.133 at 84-85), as the Rule must require for its text to make any sense. OB31-37. Plaintiffs' quotes of the R&R (PB38-39) have nothing to do with the effectiveness of methods of distribution.

Plaintiffs' claim of forfeiture (PB38) is wrong. Frank specifically argued in his objection that "the new 2018 Amendments to Rule 23" "require[] looking at actual class recovery and not fictional sums." Dkt.75 at 32 (quoting Rule 23(e)(2)(C)(ii) and citing *Briseño*); *see also* Dkt.135 at 7-9, 19-20 (Rule 72(b)(2) objection that "ignor[ing] 'the actual payout to the class' writes the word 'effectiveness' out of Rule 23(e)(2)(C)(ii)"). Neither the R&R nor the district-court adoption of it analyze or interpret Rule 23(e)(2)(C) or mention *Briseño*.

Again, plaintiffs cite (PB41-55) a variety of opinions about contested attorneys' fee disputes between class counsel and defendant that discuss the "made available" rule. None of those published cases are

about the Rule 23(e) fairness of *compromises*, where the settling parties can throttle with actuarial certainty the fictional "made available" amount to a small fraction. OB20-21; OB35-36. *Poertner* is not persuasive in its *dicta*, for it fails to address that *Pearson* discussed this very reason for distinguishing *Boeing* and rejecting the "made available" fiction. (Plaintiffs never claim, much less argue, that *Pearson* is wrongly decided; they just argue *ipse dixit* that the non-precedential *Poertner* is more persuasive.) Both *Carter v. Forjas Taurus, S.A.,* 701 Fed. App'x 759 (11th Cir. 2017), and *Poertner* are unpublished opinions that pre-date the 2018 Amendments and simply say nothing—certainly nothing that is binding—on this point. This Court has yet to cite *Poertner* in a published opinion, and is not bound by district courts that have.

"Effective" means "actual" or "producing, a desired, decisive, or desired effect" or "producing or capable of producing a result." *Effective*, *Merriam-Webster* (online version, available at [https://www.merriam-webster.com/dictionary/effective](https://www.merriam-webster.com/dictionary/effective)) (last accessed Oct. 16, 2022). "Effective typically describes things—such as policies, treatments, arguments, and techniques—that do what they are intended to do." *Id.* For example, one might describe a vaccine as "96% effective." *Id.* Plaintiffs' proposal (PB51) is that courts consider the "effectiveness of the method of distribution," but that's what Frank calls for. How does one consider effectiveness without objectively and empirically *measuring* effectiveness? By

plaintiffs' light, the FDA can evaluate the effectiveness of a vaccine by asserting "I subjectively think it will work" without looking at any data.

It is nonsense to judge effectiveness in a vacuum without considering whether the methods "d[id] what they [we]re intended to do": actually deliver money to the class. Indeed, one of plaintiffs' complaints below alleges "'Science' has not proven Neuriva's effectiveness." Dkt.133 at 10. In other circumstances, plaintiffs understand that effectiveness is necessarily something subject to objective evaluation. It is the plaintiffs who ask to "rewrite Rule 23(e)(2)" (PB51) by asking for a ruling giving district courts permission to ignore effectiveness. Whatever the R&R looked at, it was not the effectiveness of the methods of distribution. "Effectiveness" does not mean "I subjectively think it will be effective"; it means it produced actual results.

RB disagrees with plaintiffs and suggests (DB23) a different definition of the subsection: it asserts that a discussion of "a 'fair and reasonable recovery' for the class in light of the defendant's defenses" can satisfy Rule 23(e)(2)(C)(ii). This suggestion (which is not what the district court said it was doing) is wrong. It interprets Rule 23(e)(2)(C)(ii) as redundant with Rule 23(e)(2)(C)(i) and makes a nullity of (C)(ii).

RB then suggests (DB23-24) interpreting the provision "effectiveness of methods of distribution" as referring to the effectiveness of the *notice*. Again, this isn't what the R&R says it thought the Rule meant. And, more critically, it's also not what the Rule says. Fed. R. Civ.

Proc. 23(c)(2) addresses notice requirements. RB, and the district courts it cites, give no explanation of why Rule 23(e)(2)(C)(ii) would repeat an inquiry already required elsewhere in Rule 23(c)(2)—and do so without once mentioning the word "notice."

RB is simply wrong when it says *Briseño* adopted this construction. As *Briseño* itself says, "we mention the lack of direct notice to underscore that the parties here knew that the redemption rate would be extremely low and that the agreed-upon attorneys' fees would swamp the actual recovery for class members." *Briseño v. Henderson*, 998 F.3d 1014, 1020 (9th Cir. 2021). *Briseño*'s discussion of notice was an underscore of the existing problems of disproportionality. (So too in Frank's brief; Frank's discussion of notice simply provides the context that settling parties can regulate the actual claims-made recovery with actuarial certainty regardless of the fictional amount made available in part by choosing not to provide more than the constitutional minimum of notice. OB19-21.) *Briseño* rejected the settling parties' argument that the tens of millions of dollars made available made the settlement fair: "With a class of nearly 15 million consumers, ConAgra claimed that it theoretically exposed itself to nearly $67.5 million in claims if every consumer submitted a claim." 998 F.3d at 1020. But the Ninth Circuit refused to credit the "$67.5 million in potential payout" and repeatedly emphasized the $1 million in actual recovery. *Id.* Class members "ended up receiving only about 1% of that touted amount. … This gross disparity in distribution of

funds between class members and their class counsel raises an urgent red flag demanding more attention and scrutiny." *Id.* at 1026. But by appellees' lights applying pre-2018 amendment Ninth Circuit decisions *Briseño* correctly ignored (*e.g.*, PB50, PB53),[2] the Conagra settlement was eight times as valuable as the one here.

Plaintiffs incompletely quote *Baby Products* to argue for a "made available" framework. PB63. But the Third Circuit goes on to say

> We appreciate, however, that awarding attorneys' fees based on the entire settlement amount rather than individual distributions creates a potential conflict of interest between absent class members and their counsel. "Arrangements such as [these] . . . decouple class counsel's financial incentives from those of the class. . . . They potentially undermine the underlying purposes of class actions by providing defendants with a powerful means to enticing class counsel to settle lawsuits in a manner detrimental to the class." *Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1223, 1224, 120 S. Ct. 2237, 147 L. Ed. 2d 265 (2000) (denial of *cert*.) (O'Connor, J.) (discussing a percentage fee calculated against the entire settlement fund even though a significant portion would revert to the defendant). Class members are not indifferent to whether funds are distributed to them or to *cy pres* recipients, and class counsel should not be either.

---

[2] Rest assured, *Briseño* plaintiffs did not forfeit identical arguments using *Williams*. Pl. Br., Appeal No. 19-56297 Dkt.35-1 at 32 & n.13 (9th Cir. Jul. 2, 2020).

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 178 (3d Cir. 2013). We agree: class counsel should not be "indifferent to whether funds are distributed to" class members or the defendant. And *Arkin* agrees. 38 F.4th at 1011.

Even worse, Plaintiffs utterly mischaracterize *Northeastern Eng'rs Fed. Credit Union v. Home Depot, Inc.*, 931 F.3d 1065 (11th Cir. 2019). PB41-44. In *Home Depot*, class counsel argued that side deals by banks that opted out of the class should be included in the constructive common fund because class counsel's litigation had made those side deals possible, and this Court agreed. It wasn't a question of the banks being "never paid" (PB43), and the case does not even mention the "made available" construct. 931 F.3d at 1095. The case cites *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999), only for the uncontroversial proposition that a clear-sailing agreement does not bind courts. *Compare id.* at 1092 *with* PB43.

The district committed reversible legal error in its analysis—or failure to analyze—the effectiveness of the methods of distribution through the objective evidence of the actual class recovery, rather than the fictional amount made available.

**D.    The district court failed to correctly evaluate the Rule 23(e)(2)(C)(iii) red flags of disproportionate recovery, clear sailing, and a kicker. Appellees rest entirely on the "made available" fiction and identify no exceptions that could save this settlement.**

Rule 23(e)(2)(C)(iii) requires an analysis of the settlement in relation to the terms of the attorneys' fees. Even if, somehow, Rule 23(e)(2)(C)(ii) "effectiveness" does not encompass the class's actual recovery (Section I.C above), (C)(iii) does require an analysis of the proportionality of the fees that does not rely on fictional numbers. *Briseño*, 998 F.3d at 1024.

Plaintiffs quote (PB50-51) the Advisory Committee Notes but omit the most salient language. "Examination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement," in particular "*the relief actually delivered to the class* can be a significant factor in determining the appropriate fee award." 2018 Advisory Committee Notes on Rules (emphasis added).

This settlement had a "bevy of questionable provisions": the "red flags" of disproportionate recovery, clear sailing, and a kicker. *Briseño*, 998 F.3d at 1018, 1025-28; OB25. The district court committed reversible error in considering these red flags to be settlement *benefits*, rather than problems that the settling parties needed to justify. OB26 (citing Dkt.133 at 89). But even on appeal, appellees do not try to justify these generally abusive provisions as a benefit to the class. Appellees make no argument

14

that disproportionality was appropriate here (instead, they argue that one must look to the fictional amount made available); they make no attempt to refute Frank's analysis (OB25-28) that the kicker unfairly prejudiced the class. Instead, they argue (PB58-59) (as did the district court (Dkt.133 at 87-88)) that the provisions are convenient to the attorneys. But as this Court holds, "Subordinating the interests of the class for the convenience of the attorneys is as much an ethical violation as selling the class out for attorneys' fees." *Arkin*, 38 F.4th at 1012.

Yes, Frank agrees: there are rare situations when *Briseño* red flags do not forbid approval of a "good deal." *Briseño,* 998 F.3d at 1027. But appellees argue (DB28; PB58) that, because *Briseño* red flags do not *per se* invalidate settlement approval, they do not bar *this* settlement approval. The *non sequitur* should be evident. Not all American vice presidents are men, but the very rare Kamala Harris does not mean Dan Quayle or Schuyler Colfax is a woman. Appellees provide absolutely no legal rule for determining when settlement approval is appropriate or inappropriate when *Briseño* red flags are present, and ask this Court to affirm a district court ignoring the red flags entirely. There's good reason for that: the exceptions to the red flags that most appellate courts have identified do not apply to this settlement.

One exception to *Briseño* in the Ninth Circuit comes when class counsel settles a Rule 23(b)(2) class action for injunctive relief that has value and "damages were also not part of the class release." *Campbell v.*

*Facebook, Inc.*, 951 F.3d 1106, 1126-27 (9th Cir. 2020). "An injunctive-relief-only class settlement, by definition, has no fund into which any fees not awarded by the court could possibly revert," thus clear-sailing clauses and kickers cannot have deprived the class of monetary relief. *Id.* at 1127. The *Campbell* exception is irrelevant here for two reasons. *First*, damages are part of the class release in this Rule 23(b)(3) settlement; and *second*, it was entirely possible to award the excess disproportionate fees to the over 99% of class members who released their damages claims without receiving any cash at all. RB put about $4 million on the table, and class counsel expropriated all but about $1 million for itself by negotiating a segregated constructive common fund preventing a redistribution of the disproportionate fee. Of course class counsel "bargained away" (*Campbell,* 951 F.3d at 1126) better relief for the class: they chose a disproportionate constructive common fund that benefited the attorneys at class expense instead of a common fund without segregated fees that would have paid the class more and counsel less.

The other exception to *Briseño* comes if the entire class receives "essentially complete relief." *In re Southwest Air. Voucher Litig.*, 799 F.3d 701, 704 (7th Cir. 2015). If the settlement fully compensates *every* class member without compromising colorable claims, then there was no cost to the class from disproportionality, clear-sailing, or kicker clauses, and

16

the settlement is the sort of "good deal" *Briseño* discusses as an exception. 998 F.3d at 1027.[3]

The *Southwest/Briseño* "good deal" exception does not apply here. The *class* has not been fully compensated, and injunctive-relief claims were severely compromised. 99% of the class received nothing.

The Ninth Circuit asked the lower court to "give a hard look at the settlement agreement to ensure that the parties have not colluded [*sic*, self-dealt] at class members' expense." *Briseño,* 998 F.3d at 1028. *Briseño* requires "scrutinizing" not just for "potential collusion," but "unfairness." 998 F.3d at 1026. The district court did not perform that scrutiny, and thus erred.

At a minimum, appellees do not deny that the district court claimed that these abusive provisions were a benefit to the class. They do not attempt to refute Frank's reasoning (OB23-31) why this is incorrect. Nor do they attempt to refute Frank's argument that *Roes* requires reversal because the lower court erroneously conflated the Rule 23(e)(2)(B) inquiry with the Rule 23(e)(2)(C) inquiry. OB24 (citing *Roes*, 944 F.3d

---

[3] As it turns out, the *Southwest* panel discovered in a later appeal that it was factually incorrect about its "belief that the class could have done no better" and *sua sponte* considered recalling the mandate from its affirmance of settlement approval. *In re Southwest Air. Voucher Litig.*, 898 F.3d 740, 746-47 (7th Cir. 2018).

at 1049 n.12).[4] The district court committed reversible error in failing to evaluate the settlement correctly under Rule 23(e)(2)(C)(iii).

But no other conclusion other than settlement rejection should be possible. The settlement has a kicker and disproportionality; both benefit class counsel at the expense of the class and create unfairness. An economically identical $4 million settlement without a kicker and without disproportionality would have provided an additional $2 million to class members. Appellees provide no justification for this result other than to argue that the settlement wasn't actually disproportionate because of the amount made available and that there isn't a *per se* rule against red-flag provisions. But because of the kicker and the disproportionality, the "defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members." *In re Dry Max Pampers Litig.*,

---

[4] *Samsung* made a similar error in suggesting such an exception. It held that kickers and clear-sailing clauses required scrutiny, but that arms-length negotiations under a mediator could be cause to save such a settlement. *In re Samsung Top-Load Washing Machine Mktg., Sales Practices & Prods. Liab. Litig.,* 997 F.3d 1077, 1091 (10th Cir. 2021). As an initial matter, the district court did not perform even the scrutiny *Samsung* required. But *Samsung*'s proposed exception conflates the Rule 23(e)(2)(C)(iii) with the separate Rule 23(e)(2)(B) analysis. Satisfying Rule 23(e)(2)(B)'s arm's-length requirement cannot excuse failure to satisfy other provisions of Rule 23(e)(2). *Roes*, 944 F.3d at 1049 n.12; *see also Pampers*, 724 F.3d at 717; OB16-18, OB24.

724 F.3d 713, 718 (6th Cir. 2013); *cf. also Arkin*, 38 F.4th at 1011-12 ("unethical" to structure a claims-made settlement to disproportionately favor attorneys, notwithstanding the tens of millions made available). Rule 23(e)(2)(C)(iii) thus requires rejection of the settlement here.

### E. Remand is independently required because neither the R&R nor the district court gave a reasoned response to several substantive Frank objections.

Appellees do not dispute that a district-court failure to address substantive objections requires reversal under *Johnson*. *E.g.*, OB15; OB24; OB38. The *Johnson* "reasoned response" standard does not even appear in appellees' briefs. The R&R ignored a number of Frank's arguments, and then the district court, which had the Rule 72 obligation of *de novo* review, gave no reasoned response when Frank filed Rule 72(b) objections. Remand is required for this reason alone, and appellees have forfeited any argument to the contrary.

## II. The injunction to replace a few words in Neuriva's future marketing does not direct relief to the class, so cannot support final approval of a settlement waiving the class's retrospective damages claims.

*Pampers* and *Synfuel* note that prospective injunctive relief cannot be a settlement benefit for the release or other prejudice[5] of retrospective

---

[5] Plaintiffs incompletely characterize (PB59) *Pampers* as an injunctive relief class action. While the district court certified that class

damages claims. OB46. Neither appellee even mentions *Synfuel*, much less attempts to prove its reasoning unpersuasive; neither discusses *Pampers*'s analysis of the injunctive relief in that case.

Instead, both rely (PB64-65; DB4-35) on *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018). *Davidson* reversed a district court's dismissal for lack of standing. It holds that even a class member who is not deceived has Article III standing to sue for injunctive relief under state law. *Id.* at 974. *Davidson* has nothing to do with Rule 23(e) analysis of that injunctive relief, much less when it is appropriate to settle (b)(3) damages claims with prospective injunctive relief. It does, however, put another nail in the coffin in appellees' standing arguments. *See* Section III below. Frank is not today challenging plaintiffs' Article III standing to seek prospective injunctive relief in a separately represented 23(b)(2) class. But that someone may survive a Rule 12(b)(1) motion at the injunctive-relief pleading stage does not empower her to release the damages claims of 23(b)(3) class members in exchange for injunctive relief affecting opt-outs and the world at large.

---

under 23(b)(2), the settlement enjoined class members from bringing class actions for damages and purported to release all "equitable" claims—which would include the (b)(3) equitable remedies of restitution and disgorgement. 724 F.3d at 716; *compare* Dkt.51 at 55 ¶ 255 (seeking equitable remedies for damages). *Pampers* did not address this objected-to violation of *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

Frank provided some hypotheticals to support his reasoning for why such prospective injunctive relief is inappropriate to settle retrospective damages claims. OB42-43. RB jeers at the hypotheticals (DB35-36; DB17-18)—but ends with just jeering without any attempt to address the underlying argument. This is a question of first impression for this Court, and theory and public-policy implications matter. Frank's analysis remains just as valid if the Court substitutes the names "Able," "Baker," and "Charlie" for those of beloved characters in a sitcom episode about consumer fraud. It's the same reasoning given by *Synfuel* and *Pampers*. (RB's argument about the injunction's value (DB36 n.2), aside from being entirely inapposite to *Synfuel*'s reasoning, oddly focuses on the putative lack of merit in the original consumer-fraud claim. But if RB is correct that its original label was accurate, it means that any non-negligible value of the injunction is negative. RB's footnote also repeats without defending the district court's error confusing a defendant's putative competitive disadvantage with class benefit. OB39-42.)[6] But RB's jeering is more than plaintiffs' answer to the hypotheticals, which was… nothing.

---

[6] For example, imagine an injunction that required RB to paint its factories and offices a repulsive shade of Pantone 448. This would perhaps be a competitive disadvantage to RB as employees flee to more aesthetic environs, but it would not be a *class* benefit.

The appellees provide no reason to create a circuit split and reject the persuasive reasoning of *Synfuel* and have forfeited the question. (Ironic that RB complains about purported lack of precedent (DB18) while ignoring the precedent Frank cites and failing to identify any of its own addressing Frank's argument.) The district court erred as a matter of law in ascribing value to the class from the injunction.

## III. Frank is a class member whose claims are compromised by the settlement and has standing to appeal settlement approval.

For the first time on appeal, appellees attempt to muddy the issues before the Court by inventing a challenge to Frank's standing. To begin, a party may not wait until appeal to raise factual disputes about jurisdiction. For example, if a complaint or removal alleges diversity jurisdiction, a party may not delay proceedings on appeal by making speculative factual contentions that it forfeited below. *E.g.*, *Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000). Plaintiffs had the opportunity to challenge Frank's proof of class membership, which included an Amazon receipt, a declaration, and a photo of the bottle. If the plaintiffs correctly pleaded that Neuriva's misleading labeling creates a market price premium for the entire class (Dkt.51 at 37), this artificially high price harmed Frank proportionally. If plaintiffs are incorrect that Frank paid a price premium, it means plaintiffs' underlying claims are *meritless*, or that the district court erred

22

in certifying a class, but it does not deprive Frank or plaintiffs of *standing*. *See, e.g., Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998); *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). Frank stands in the same economic shoes as all class members. Having obtained a release of a certified class by persuading the district court to find that all class members are similarly situated (Dkt.57 at 3),[7] the appellees are judicially estopped from asserting that class membership includes plaintiffs with individualized claims.

Frank objected to a settlement that binds him, and plaintiffs cite no authority that he must *prove* anything more.[8] Nor can they, for Supreme

---

[7] Oddly, perhaps because no one challenged class certification, neither the R&R nor the district court's final order formally certified the class, and nobody noticed until this brief. We assume *arguendo* that the Rule 23(e)(1)(B) order has that effect, but under the Federal Rules, it technically can be only a finding that the "court will likely be able to … certify the class for purposes of judgment on the proposal." *Cf. In re Target Corp. Customer Data Breach Litig.*, 847 F.3d 608, 613 (8th Cir. 2017) (preliminary approval certification does not preempt need for analysis at final approval).

[8] Plaintiffs show some *chutzpah* (PB30) by stipulating to an order (Dkt.57 at 5-6 ¶13) requiring Frank to devote 29 declaration pages detailing his objection experience and then suggesting it was narcissistic for him to comply with a court order.

Ironically as they focus the Court's attention on this mandatory 29-page list of previous cases, plaintiffs assert *ipse dixit* (PB36) that Frank "has not been successful in other courts," though Frank argued *Briseño*

Court precedent forecloses this: "As a member of the [] class, [Frank] has an interest in the settlement that creates a 'case or controversy' sufficient to satisfy the constitutional requirements of injury, causation, and redressability." *Devlin v. Scardelletti*, 536 U.S. 1, 6-7 (2002) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)). Frank's declaration established that he was a member of the class who purchased Neuriva during the class period, Dkt.75-1 at 1-2, which the Complaint alleged was "ineffective and worthless," Dkt.51 at 35-37. "Once he established that he was a member of the class, he needed to do no more in order to proceed with his objection." *Berni v. Barilla S.P.A.*, 964 F.3d 141, 145-146 (2d Cir. 2020). "For the same reason, he need do no more now to proceed with his appeal before this Court." *Id.*

The initial complaint establishes courts' Article III jurisdiction. Appellate standing exists because Frank's injury—the waiver of his claims in exchange for money going to attorneys instead of class members—is redressable by a successful appeal. Plaintiffs' reliance on *In re First Cap. Holdings Corp. Fin. Prod. Sec. Litig.*, 33 F.3d 29 (9th Cir. 1994), to the contrary is misplaced. The Supreme Court abrogated the proposition for which plaintiffs cite it—that class membership is insufficient to confer Article III standing to contest an undesired

---

and *Pearson* and *Redman* and *Baby Products* and many other cases he relies upon.

settlement. *Devlin*, 536 U.S. at 7; *see also* 2003 Amendments to Rule 23, (then-enumerated Rule 23(e)(4) (now Rule 23(e)(5)) specifically allowing "any class member to object."). The ability of objecting class members to appeal settlement approval "does not implicate the jurisdiction of the courts under Article III of the Constitution." *Devlin*, 536 U.S. at 6-7.[9] Because Frank "is a member of the class bound by the judgment, there is no question that he satisfies [the three requirements for Article III standing]." *Id.* at 7. As the Ninth Circuit recognized post-*Devlin*, "neither Article III nor prudential standing is implicated by the efforts of non-intervening objectors to appeal class-action settlements." *Churchill Village, L.L.C. v. Gen. Electric*, 361 F.3d 566, 572 (9th Cir. 2004). The parties may ask for *certiorari* for the Supreme Court to overrule *Devlin*, but the Supreme Court's "decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." *Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016) (quoted by *Johnson*, 975 F.3d at 1260).

Next, plaintiffs claim (without citation) that because Frank may receive the full purchase price of his supplements from the settlement his injuries lack redressability, and he lacks standing for that reason. Wrong again. Class members have standing to challenge unwanted settlements

---

[9] *Steel Co.* also abrogated *First Capital*; the Ninth Circuit confused the supposed futility of a class member's appeal with the standing to bring that appeal.

even if the settlement putatively "fully compensates" the objector. *In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, 869 F.3d 551, 555 (7th Cir. 2017) (finding Frank has standing and reversing settlement approval); *Rawa v. Monsanto Co.*, 934 F.3d 862, 867 (8th Cir. 2019).

But even plaintiffs' premise is incorrect. Frank would not be fully compensated by a settlement's repayment of the cost of his purchase because the complaint seeks other relief that the settlement compromises away. First, the complaint seeks injunctive relief and so Frank still has standing to seek redress of that claim for relief. *Davidson*, 889 F.3d 956 (cited by both appellees for other reasons as if it were not just an Article III standing case). Second, the complaint seeks pre- and post-judgment interest (Dkt.51 at 56 ¶6), which the settlement does not provide. The settlement has compromised Frank's claims. "Class members suffer injury in fact if a faulty settlement is approved, and that injury may be redressed if the court of appeals reverses. What more is needed for standing?" *In re Navigant Consulting, Inc. Sec. Litig.*, 275 F.3d 616, 620 (7th Cir. 2001) (Easterbrook, J.) (answering that question by holding timely intervention as a party is also required; abrogated on those grounds by *Devlin*).

*Feder* is inapposite: there, the court affirmed a holding that the putative objector was not a class member and dismissed his appeal. *Feder v. Elec. Data Sys. Corp.*, 248 F. App'x 579 (5th Cir. 2007). "The necessary elements of Urbanik's standing to object could be established by proof of

his class membership." But there is no dispute that Frank is a member of the class. Of course, non-class-members lack standing to challenge settlements that do not bind them, but the class definition here includes and binds Frank.

In sum, Frank is a class member. Based on that status he has standing to bring his appeal to challenge approval of a settlement that violates Rule 23(e) and the rights of the class. That he may receive what amounts to a refund for his purchase of Neuriva has no legal bearing on his ability to object to the other compromised relief.

Finally, the new Fed. R. Civ. P. 23(e)(5)(A) permits an objector who is a member of the class to object on behalf of the entire class, as Frank did here. Dkt.75 at 8. In doing so, he assumes a limited fiduciary duty "to represent [the] common rights" of the class. *Pearson v. Target Corp.*, 968 F.3d 827, 834 (7th Cir. 2020) (*Pearson III*). (One difference with a class representative: there is no requirement that the Rule 23(e)(5) objector meet the Rule 23(a)(3) typicality standard.) Just as a defendant cannot moot a class action by offering to buy off the class representative, an offer to provide a refund to a publicly minded objector does not deprive him of standing to rectify the injury to the class as a whole from a self-dealing settlement. *Cf. Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). Indeed, if appellees offered Frank $1,000,000 to drop his appeal without benefit to the class—unquestionably in excess of anything he could

27

recover at a trial—Frank would have a legal as well as a moral obligation to reject the settlement offer. *Pearson III*, 968 F.3d 827.

## Conclusion

The district court's final judgment granting settlement approval must be vacated. The Court should further find that Rule 23(e) and *Arkin* preclude approval of this settlement.

Dated:  October 17, 2022          Respectfully submitted,

*/s/ Theodore H. Frank*
Theodore H. Frank
John M. Andren
HAMILTON LINCOLN LAW INSTITUTE
  CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC 20006
Telephone: (703) 203-3848
Email:  ted.frank@hlli.org

*Attorneys for*
      *Appellant Theodore H. Frank*

## Certificate of Compliance

This brief complies with the type-volume limitation of Fed. R. App. Proc. 32(a)(7)(B) because this brief contains 6,478 words, excluding the parts of the brief exempted by 11th Cir. R. 32-4, as counted by Microsoft Word.

This brief complies with the typeface requirements of Fed. R. App. Proc. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Executed on October 17, 2022     */s/ Theodore H. Frank*
                                  Theodore H. Frank